Melissa GRIGORUK, Appellee,

v.

Michael K. GRIGORUK, Appellant.

Superior Court of Pennsylvania.

Argued Aug. 29, 2006.

Filed Nov. 20, 2006.

Ellen C. Schurdak, Bethlehem, for appellant.

BEFORE: KLEIN, BOWES and KELLY, JJ.

OPINION BY BOWES, J.:

¶ 1 This is an appeal from an order modifying support and awarding an increase in child support to Mother. We affirm.

¶ 2 Melissa and Michael Grigoruk, now divorced, are the parents of two children, Trevor, age nine, and Bronte, age twelve. Under the parents' shared physical custody arrangement, Mother has the children eight days and Father has custody six days during a two-week period.

¶ 3 Since 1998, Mother has been employed as an administrator/executive, primarily in the education field, earning $84,000 to $101,400 annually. Most recently, Mother was Chief Executive Officer of the Greater Lehigh Valley Girl Scout Council, earning approximately $90,000 annually. Mother has a Bachelor's Degree in psychology and elementary education, a Master's Degree in education and reading, and a Doctorate in education. Mother is also certified as an elementary school and secondary school principal, a school superintendent, and a reading specialist. In March 2004, Mother left her position with the Girl Scouts and is currently employed as a reading specialist with an annual salary of $52,000.

¶ 4 On March 17, 2005, Mother filed for modification of the existing support order averring the following material change in circumstance: "It has been approximately three years since the last order and the prior order included an offset for [Mother's] alimony *pendent lite* obligation to [Father], which has been resolved by the Property Settlement Agreement dated December 7, 2004." Petition for Modification, 3/17/05, at ¶ 2. After a support conference was held on May 20, 2005, an interim support order was issued accepting Mother's representation of a decreased earning capacity. Father requested a hearing *de novo*.

¶ 5 At the July 20, 2005 evidentiary hearing, Mother testified that after she left her position with the Girl Scouts,[1] she conducted a six-month job search focusing on college professorships and education positions within school districts, including applications for school principal positions. She recalled that she sent out approximately ten applications. In September 2004, Mother accepted a position as a reading specialist with an annual salary of $52,000, the only job offer she received. Mother also teaches summer school and volunteers at her boyfriend's retail business. Mother testified that she terminated her job search after accepting the reading specialist position and admitted that she enjoys the less demanding job as it affords her more time with her children.

¶ 6 The Hearing Master determined that Mother's change in employment was not motivated by an attempt to minimize her support obligation. The Master also found that Mother acted responsibly and in good faith to mitigate her earning loss.

¶ 7 The Master then addressed whether Mother has an ongoing duty to continue to search for higher-paying work. While the Master acknowledged some merit to Father's position that Mother should continue to expend a good faith effort to mitigate lost earnings, he was likewise sympathetic to Mother's position that she is committed to her new job and would not want to jeopardize her employment by continuing

---

1. Father maintained that Mother either voluntarily resigned from her executive position with the Girl Scouts or was terminated for willful misconduct. Mother was unable to comment on the reasons for her departure as her severance agreement contained a confidentiality clause. For purposes of the hearing, the Master presumed that Mother was discharged due to willful misconduct.

to mount a job search. Balancing the two contentions, the Master concluded that *Ewing v. Ewing,* 843 A.2d 1282 (Pa.Super.2004), and its progeny do not require that Mother be assessed a higher earning capacity merely because she has not continued to search for a higher paying job. The Master thus recommended that Mother's income be calculated in accordance with her current salary as a reading specialist.

¶ 8 Father filed exceptions to the recommendation, averring that Mother should be assessed an earning capacity of an experienced school administrator. On January 12, 2006, the trial court adopted the Master's findings and denied Father's exceptions. This appeal followed.

¶ 9 On appeal, Father claims that Mother should be assessed an earning capacity as an experienced school administrator and that she has an ongoing duty to mitigate her loss of income by continuing to search for a position that matches her established career and academic credentials.

■ ¶ 10 In reviewing a support order, we are limited to considering whether based on clear and convincing evidence the trial court abused its discretion. *Novinger v. Smith,* 880 A.2d 1255 (Pa.Super.2005).

■ ¶ 11 We first address whether Mother's earning capacity was correctly assessed.

Pa.R.C.P. 1910.16–2(d) provides:

**(d) Reduced or Fluctuating Income.**

(1) *Voluntary Reduction of Income.* When either party voluntarily assumes a lower paying job, quits a job, leaves employment, changes occupations or changes employment status to pursue an education, or is fired for cause, there generally will be no effect on the support obligation.

. . . .

(4) *Earning Capacity.* Ordinarily, either party to a support action who willfully fails to obtain appropriate employment will be considered to have an income equal to the party's earning capacity. Age, education, training, health, work experience, earnings history and child care responsibilities are factors which shall be considered in determining earning capacity.

■ ¶ 12 Under Rule 1910.16–2(d)(1), if a party voluntarily accepts a lower paying job, there generally will be no effect on the support obligation. A party may not voluntarily reduce his or her income in an attempt to circumvent his support obligation. *Woskob v. Woskob,* 843 A.2d 1247, 1253–54 (Pa.Super.2004); *Dennis v. Whitney,* 844 A.2d 1267, 1269–70 (Pa.Super.2004). Where a parent is fired for cause, however, the court can consider reducing the parent's child support obligation under Rule 1910.16(2)(d)(1) if the parent establishes that he or she attempted to mitigate lost income. *Ewing, supra* at 1288.

¶ 13 As noted, for purposes of the support hearing, it was assumed that Mother was terminated from her Girl Scout position for willful misconduct. It was also undisputed that Mother's job loss was not a result of Mother's effort to avoid her support obligation. Therefore, under *Ewing,* we scrutinize Mother's effort to mitigate her decreased earnings.

¶ 14 Father argues that Mother must be assessed an earning capacity corresponding to her prior employment history and qualifications because she did not attempt to mitigate the income loss resulting from her termination. Father claims that Mother engaged in a negligible job search, applying for ten jobs in six months, and that Mother chose not to pursue available administrative positions for which she had the requisite experience, education, and

certifications for the personal reason that she enjoyed having more time with her children.

¶ 15 The Master found that while Mother did not submit an application for every job suited to her qualifications, she applied for quite a few positions, including those with a salary commensurate with her prior earnings. Mother accepted the one job she was offered. The Master observed that if Mother had refused the reading specialist position to continue her job search, she might open herself to a challenge that she did not properly mitigate her loss of earnings.

¶ 16 There was no abuse of discretion in these findings. Mother undertook a sufficient job search and applied for a variety of positions, including those offering compensation at a rate equal to her prior earnings. She accepted the only offer of employment she received. These facts distinguish the present matter from the cases relied upon by Father.

¶ 17 First, in *Baehr v. Baehr*, 889 A.2d 1240 (Pa.Super.2005), the father was assessed an earning capacity based upon a twelve-year work history in the information technology field. The father was laid off from a computer company where he had worked for five years, making $60,000 annually plus bonuses. He collected unemployment for three months and then went to work for his brother for $16.50 an hour. His job search consisted of contacting various companies to inquire about employment opportunities and posting his resume on Monster.com. We found that the father did not make a reasonable effort to find employment commensurate with his ability and assessed him an earning capacity based upon his work history in the computer field.

¶ 18 Next, in *Novinger, supra,* we held that the trial court abused its discretion in holding the father to an earning capacity

of $40,000 based on a welder's job that the father held for one year, more than four years ago, for which he was unqualified and had no formal training. We instructed instead that the focus should be on the father's employment status before he requested a support modification. *Id.* at 1256.

¶ 19 Finally, in *Samii v. Samii,* 847 A.2d 691 (Pa.Super.2004), we assessed the mother an earning capacity as a full-time dentist and did not accept her personal decision to discontinue working to warrant modification of her child support obligation. We observed that the mother stopped working, knowing that she was not entitled to alimony under the property settlement agreement and that she was subject to a geographic non-compete covenant in her employment contract. We determined that the mother's changed financial situation was the result of her own misguided choices, made with full knowledge of their ramifications. *Id.* at 697.

¶ 20 Each of these cases is distinguishable. Unlike the father in *Baehr,* Mother undertook a responsible job search. Distinct from *Novinger,* the factfinder herein considered Mother's relevant employment history, academic credentials, and credited Mother's attempts to find commensurate employment when assessing her earning capacity. Finally, Mother's rational decision to accept a position at a reduced salary rather than continue a job search with no salary was dissimilar from Ms. Samii's poorly-reasoned choice to discontinue any employment to stay home with her school-aged child.

¶ 21 For these reasons, we conclude that the trial court correctly adopted the Master's assessment of Mother's earning capacity based upon her current employment as a reading specialist.

¶ 22 Father next argues that Mother had an ongoing duty to mitigate her loss of income by continuing to search for a position that matches her established career and academic credentials. He claims that Mother filed for a modification prematurely, offering that higher paying jobs, matching her experience and prior salary history, were advertised after she took the reading specialist job and that Mother had an obligation to pursue those opportunities.

¶ 23 This question has never been addressed by Pennsylvania appellate courts and the caselaw cited by Father to support an ongoing duty to mitigate income loss is vague. First, Father refers to the general language in *Yerkes v. Yerkes,* 573 Pa. 294, 824 A.2d 1169 (2003), concerning the best interests of the children and that attention to their needs should not change due to a parent's diminished income. Reliance on this language is overreaching. There was no testimony here that the best interests of the Grigoruk children have been compromised by Mother's acceptance of a lower-paying job. The children have remained in private school and are continuing with their extracurricular activities. Additionally, without the additional time demands of her previous employment, Mother has more time to spend with her children. Father also revisits the factual scenarios in *Baehr, Novinger,* and *Samii* to disparage the sincerity of Mother's employment search. We have already determined that these cases are distinguishable.

 ¶ 24 There was no abuse of discretion in declining to impose an ongoing duty to mitigate Mother's reduced income. First, the law does not compel such an obligation. The Master, instead, properly credited Mother's assertion that having accepted the teaching position, she is committed to performing this job. If Mother, after a period of time in her teaching job, was aware of a possibility for advancement or was offered a higher paying job, there might be some argument that she should pursue such employment and be assessed at a higher earning capacity. But, as of now, there was no error in the Master's assessment of Mother's earning capacity at her reading specialist salary merely because, once employed, she discontinued her job search to avoid jeopardizing her present employment.

¶ 25 Order affirmed.