J-S25018-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MATTHEW F. KOEPFER | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| MARIA KOEPFER | |
| Appellee | No. 1761 MDA 2013 |

Appeal from the Order Entered September 27, 2013
In the Court of Common Pleas of Dauphin County
Domestic Relations at No: 1466 CR 12

BEFORE:  OTT, STABILE, and MUSMANNO, JJ.

MEMORANDUM BY STABILE, J.:                **FILED AUGUST 07, 2014**

Appellant, Matthew F. Koepfer ("Husband"), appeals from the September 27, 2013 order directing him to pay $3,767.02 per month for child support and alimony *pendente lite*[1] and $106.00 per month for arrears. We affirm.

Husband and Appellee, Maria Koepfer ("Wife") were married in 1998 and separated in 2012. They have two minor daughters. Wife commenced this litigation with a complaint for support filed on August 29, 2013. For

_____

[1]  Of that amount, $2,072 is allocated to child support and $1,695 as alimony *pendente lite*. As no divorce decree has been entered, the trial court's order is final and appealable only insofar as it pertains to child support. ***Hrinkevich v. Hrinkevich***, 676 A.2d 237, 239 (Pa. Super 1996). As all of Husband's arguments challenge the trial court's basis for calculating child support, we have jurisdiction to review them.

most of the marriage, Wife stayed home with the parties' children while Husband worked in sales and traveled frequently. Husband worked for General Electric ("GE") for approximately 12 years until 2012, when he left GE and took a job with Agra Film and Radiology ("Agra"). The parties offered conflicting testimony on whether Husband left GE voluntarily or was fired. Husband claims he left GE in order to reduce his travel requirements and spend more time with the parties' daughters. He further claims that he gave two weeks' notice to GE and the company asked him to leave immediately because he planned to work for a competitor. Wife claims GE terminated Husband for cause because he was not devoting enough time to his job and failing to meet his commission goals.

In his last three years at GE, Husband earned $150,000, $198,000, and $152,000, respectively. His base salary at Agra was $87,000, and Husband claimed he was not eligible to earn any commission until 2015, though the commission would be substantial. Subsequent to the parties' separation, Wife obtained work as a dental assistant earning $15.00 per hour for 29 hours per week.

After a September 6, 2013 hearing, the trial court imputed to Husband an earning capacity of $166,000 per year, based on the average of his final three years at GE. The trial court also found that Husband earned $4,000 per year in eBay sales. Based on an annual gross income of $170,000 attributed to Husband, the trial court entered the aforementioned order.

Husband filed this timely appeal on October 2, 2013. He raises five issues for our review:

I.     Whether the trial court improperly imputed [Husband's] income with his current employer where the trial court's calculations were based on [Husband's] income from the previous three (3) years when he worked for a different employer?

II.    Whether the Court erred when it imputed [Husband's] income by including a hobby as a source of a second income where the facts presented at the *de novo* hearing establish that [Husband] has more expenses from his hobby than he does income?

III.   Whether the trial court erred when it improperly calculated [Husband's] 2013 income by including non-existent bonuses in [Husband's] current income despite the fact that [Husband] provided testimony which established that he does not and will not receive any bonuses in 2013 and [Husband] provided testimony that he does not anticipate any potential bonuses until at least 2015?

IV.    Whether the trial court erred when it failed to address the tax return issue from 2012 where [Wife] and [Husband] resided together for a majority of the year and there would have been a financial benefit if the parties filed jointly as [Husband's] tax liability would have been greatly reduced resulting in a larger income for [Husband] and his children for support purposes?

V.     Whether the trial court erred when it improperly imputed [Wife's] 2013 income when [Wife] admittedly worked a portion of the 2013 year full time at a rate of fifteen ($15) dollars per hour. Instead, the trial court improperly calculated [Wife's] 2013 income based on her working only twenty-nine (29) house [sic] per week at fifteen ($15) dollars per hour?

Husband's Brief at 4-5.

We review the trial court's support order according to the following strictures:

When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

**K.J.P. v. R.A.P.**, 68 A.3d 974, 978 (Pa. Super. 2013).[2] "Furthermore, this Court must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations." **Mackay v. Mackay**, 984 A.2d 529, 533 (Pa. Super. 2009). "In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand." **Id.**

Husband's first assertion of error is that the trial court erred in assigning him an earning capacity based on his final three years with GE. Rule 1910.16-2 of the Pennsylvania Rules of Civil Procedure governs support and income calculations. The trial court relied on Rule 1910.16-2(d), which provides in relevant part as follows:

---

[2] Likewise, we review an award of alimony *pendente lite* for abuse of discretion. **Strauss v. Strauss**, 27 A.3d 233, 236 (Pa. Super. 2011), *appeal granted*, 41 A.3d 1286 (Pa. 2012), *appeal discontinued*, (March 27, 2013).

**(d) Reduced or Fluctuating Income.**

(1) *Voluntary Reduction of Income*. When either party voluntarily assumes a lower paying job, quits a job, leaves employment, changes occupations or changes employment status to pursue an education, or is fired for cause, there generally will be no effect on the support obligation.

(2) *Involuntary Reduction of, and Fluctuations in, Income*. No adjustments in support payments will be made for normal fluctuations in earnings. However, appropriate adjustments will be made for substantial continuing involuntary decreases in income, including but not limited to the result of illness, lay-off, termination, job elimination or some other employment situation over which the party has no control unless the trier of fact finds that such a reduction in income was willfully undertaken in an attempt to avoid or reduce the support obligation.

[…]

(4) *Earning Capacity*. If the trier of fact determines that a party to a support action has willfully failed to obtain or maintain appropriate employment, the trier of fact may impute to that party an income equal to the party's earning capacity. Age, education, training, health, work experience, earnings history and child care responsibilities are factors which shall be considered in determining earning capacity. In order for an earning capacity to be assessed, the trier of fact must state the reasons for the assessment in writing or on the record. Generally, the trier of fact should not impute an earning capacity that is greater than the amount the party would earn from one full-time position. Determination of what constitutes a reasonable work regimen depends upon all relevant circumstances including the choice of jobs available within a particular occupation, working hours, working conditions and whether a party has exerted substantial good faith efforts to find employment.

Pa.R.C.P. 1910.16-2(d).

In ***Kersey v. Jefferson***, 791 A.2d 419 (Pa. Super. 2002), the husband quit a $70,000 per year job and took a $32,000 per year job in order to attend medical school. ***Id.*** at 422. Given the reduction in income,

- 5 -

the husband sought a modification of his child support obligation. *Id.* The trial court lowered the husband's support obligation to account for a reduction in the child's daycare expenses, but did not lower the support obligation based on the husband's reduced income. *Id.* This Court affirmed, concluding the husband did not demonstrate any effort to mitigate the loss of income when he changed jobs. *Id.* at 423. Further, we reasoned that a support obligation is similar to a mortgage, car payment, or other fixed obligation that does not change based on the obligor's change in employment status. *Id.* at 424. The husband's career aspirations, while "laudable and commendable," also "subordinated the immediate financial needs of his wife and children to his career aspirations." *Id.*

In ***Grigoruk v. Grigoruk***, 912 A.2d 311 (Pa. Super. 2006), however, this Court noted that a trial court can reduce the support obligation of a parent fired for cause where the parent makes an effort to mitigate the lost income. *Id.* at 313. The mother in ***Grigoruk*** conducted a six-month job search and eventually took the only job she was offered, resulting in an reduction in salary. *Id.* at 312. During the six-month job search she applied for numerous jobs whose salary would have been commensurate with her former earnings. *Id.* Upon accepting new employment, the mother ended her job search so as not to jeopardize her new employment. *Id.* at 315. Under these circumstances, we concluded the trial court did not abuse its discretion in lowering the mother's support obligation in light of her lower

income.  *Id.* at 314; *see also Ewing v. Ewing*, 843 A.2d 1282 (Pa. Super. 2004) (trial court abused its discretion in failing to consider the father's efforts to mitigate lost income after he was fired).

Instantly, the parties offered conflicting testimony on the reason for Husband's departure from GE.  Husband claimed he chose to take the Agra job in order to spend more time with the parties' daughters.  Wife claimed Husband was terminated for cause.  The trial court found Wife's testimony credible, and determined that Husband was fired for cause.  We are bound by the trial court's credibility determinations if they are supported in the record.  *Mackay*, 984 A.2d at 533.  The evidence on this point is limited to the testimony the parties offered at the hearing.  As such, we find little to confirm or refute either party's testimony.  We observe, however, that Husband only has custody of the daughters every other weekend, and the trial court apparently credited Wife's testimony that he has made little effort to spend time with the daughters since his departure from GE.  We therefore have no basis upon which to disturb the trial court's credibility determination.

In any event, Husband's departure from GE was plainly voluntary under Rule 1910.16-2(d)(1), as that subsection applies to parties who voluntarily assume a lower paying job or are fired for cause.  Husband argues, without citation to authority, that the trial court should assess his earning capacity based on his new job because he took that job to spend

more time with his children. Since the trial court did not credit Husband's explanation for changing jobs, and since nothing in the record undermines the trial court's finding, this argument lacks merit.

In addition, Husband offered no evidence of any effort to mitigate lost income. Husband asserts that his previous job paid more because he was based in Washington, D.C. He also asserts that high-paying jobs are less plentiful in the Harrisburg area. Nonetheless, Husband failed to make a record of the extent of his job search, including how long he searched for his current job, how many applications he sent out, etc. In this regard, this case is easily distinguishable from **Grigoruk**, in which the mother took the only job offer she received after an extensive six-month search. Husband's first assertion of error lacks merit.

Husband's second assertion of error is that the trial court erred in imputing $4,000 per year in earning capacity to Husband based on his eBay sales. Husband argues the law forbids this result, citing Rule 1910.16-2(d)(4), which provides that a trial court "should not impute earning capacity that is greater than the amount the party would earn from one full-time position." Pa.R.C.P. 1910.16-2(d)(4).

In deciding this issue, the trial court relied on Husband's admission that he reported $4,000 in hobby income from eBay sales on his 2012 tax return. The trial court also noted that Husband's eBay account reflected

sales of over $14,000 through the first five months of 2013.[3] Husband argues that any income from his eBay dealings is more than offset by the cost of items he has bought and been unable to sell.

The trial court reasoned that the eBay income was not imputed, but based on evidence that Husband earned $4,000 from eBay sales in 2012 and perhaps substantially more in 2013. Thus, the court reasoned it did not impute a second income to him in violation of 1910.16-2(d)(4). We agree. Rule 1910.16-2(a) includes in its definition of income "net income from business or dealings in property." 1910.16-2(a)(2). While Husband argues his eBay dealings are merely a hobby, he does not dispute that he devotes substantial time to acquiring items and reselling them at a profit, both on eBay and at several flea market booths he rents. Husband has testified that he intends to cease his eBay dealings, because it has become too much work. Regardless of Husband's future plans for his eBay dealings, the record supports the trial court's findings that Husband presently earns income that way. Husband's second argument does not merit relief.

For his third argument, Husband asserts the trial court erred in including commission in its computation of income, inasmuch the record contains uncontradicted evidence that he will not receive a commission until at least 2015. This argument lacks merit because Husband has

---

[3] Husband apparently shut down the account after Wife obtained this information.

misconstrued the trial court's computation of imputed income. As the court explained: "[T]he income assigned to obligor was based upon his earing capacity reflective of the average of his actual income between 2010 and 2012; it did not include any current projected bonuses or commissions." Trial Court Opinion, 12/12/13, at 6-7.

Husband next argues the trial court erred in declining to direct the parties to file a joint 2012 tax return. Wife filed her 2012 tax return separately, and Husband claims filing a separate 2012 tax return resulted in $12,000 in tax liability as opposed to the $3,000 in tax liability he would incur with a joint tax return.[4]

The trial court declined to direct the parties to file a joint return, finding no legal authority for such action. Further, the trial court reasoned that forcing Wife to file a joint return would expose her to joint and several liability for all taxes, interest and penalties for the year of the filing. Finally, the trial court reasoned that, to the extent Wife dissipated assets by filing a separate tax return, that issue should be addressed in an equitable distribution proceeding rather than a support action.

Husband cites no law authorizing the trial court to force Wife to file a joint tax return, and our own research has uncovered none. ***But see***

_____

[4] According to Husband's counsel, Husband has been in contact with the IRS regarding the status of the tax liability for his 2012 return and he hopes to file an amended return so as to reduce that liability. N.T. Hearing, 9/6/13, at 16-17.

*generally*, Melvin B. Frumkes and Robert S. Steinberg, Can and Should a State Court Order an Unwilling Spouse to File a Joint Federal Income Tax Return?, 25 J. Am. Academy of Matrimonial Law 115 (2012). Furthermore, we believe the trial court offered persuasive reasoning in support of its decision not to do so. We therefore conclude Husband's fourth assertion of error lacks merit.

Husband's fifth and final assertion of error is that the trial court's computation of Wife's income was too low. Specifically, Husband asserts that the trial court should have assigned Wife income based on a full-time schedule, at least for the summer months, rather than 29 hours per week. The trial court found credible Wife's assertion that she could only work 29 hours per week during the school year because she has custody of the parties' two daughters on weekdays and she needs to be available in the evenings for their various extracurricular activities. Wife admitted she worked full-time during the summer of 2013.

Rule 1910.16-2(a) provides that a party's monthly gross income is "ordinarily based upon at least a six-month average of all of a party's income." Pa.R.C.P. 1910.16-2(a). Given Wife's inability to work more than part time during approximately nine months of the year while her daughters are in school, we cannot conclude that the trial court abused its discretion in calculating Wife's income based upon her part time earnings. We therefore reject Husband's final assertion of error as lacking in merit.

Since we have considered each of Husband's assertions of error and found them lacking in merit, we affirm the trial court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/7/2014