J-S73018-14 & J-S73019-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| M.R.V. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| N.V. | |
| Appellant | Nos. 997 MDA 2014<br>1196 MDA 2014 |

Appeal from the Order Entered May 12, 2014
In the Court of Common Pleas of Lancaster County
Domestic Relations at Nos.: Docket No. 2013-2673
PACSES No. 572114216

BEFORE:  BOWES, J., WECHT, J., and MUSMANNO, J.

MEMORANDUM BY WECHT, J.:                    **FILED DECEMBER 30, 2014**

N.V. ("Father") appeals the May 12, 2014 order that set Father's child support and alimony *pendente lite* ("APL") obligation to M.R.V. ("Mother"). The order also established the percentages of the unreimbursed medical and extracurricular expenses for the parties' children for which Mother and Father were responsible.  After review, we affirm.

The trial court set forth the following factual and procedural history:

A support complaint was filed on September 12, 2013 by [Mother] against [Father], asking for spousal support and child support for the parties' two children, A.V., age 16[,] and K.V., age 13.  After an office conference on October 10, 2013, an interim order was entered on November 22, 2013, effective September 4, 2013.  A hearing *de novo* was scheduled for January 31, 2014 in response to Father's appeal filed on December 9, 2013 and to [Mother's] appeal filed on December 18, 2013.  It was then continued [until] March 25, 2014.  On March 25, because testimony could not be completed, the matter was continued to May 2, 2104.  The hearing was held on May 2,

2104 and an Order was issued on May 12, 2014, effective September 4, 2013. Pursuant to the Guidelines, Father is to pay $1,058.86 per month allocated as child support of $783.95 and APL of $274.91 per month. The unreimbursed medical expenses and the agreed-upon extracurricular activities were allocated at 62% - 38%.

\* \* \*

[Father and Mother] were married on October 2, 1996. They separated on May 30, 2013 when [Mother] moved out of the marital residence. They have two children . . . . Since separation,] each has custody one-half of the time. Each party claims one child for tax purposes. Father still lives in the marital residence. An APL claim is contained in the divorce complaint. Both parties have medical insurance for the family through employment.

Father has been employed by the Pennsylvania State Police since 1992. He earns a bi-weekly gross of $3,926.60 with a net of $5,875.45 per month. Father has a flexible schedule and opportunity for overtime, although his overtime has been reduced because of his desire to have more time with his children. He recently was working on a case in Berks County which gave him a higher pay, but that job is now over. The children's extracurricular activities cost $80.00 bi-weekly for school lunches, cell phone bills, hitting lessons, ski club, lacrosse and baseball activity fees for an annual total of $930.00. Father has been paying these sums, and has requested a downward deviation therefor.

Mother works for the police department of Lebanon County. She receives a bi-weekly gross of $2087.31 for a monthly net of $3269.82. She owns her own home, bought after separation, having purchased it with a loan from her mother. Her mother also helps her financially with legal bills for the divorce. She would be willing to share the children's extracurricular expenses.

The party's primary dispute involves the fact that Mother was previously employed by the East Lampeter Police Department for 18 years and had annual earnings higher than her current employment. She had resigned and her last day of work there was November 18, 2011. Father argues that she should now be held to an annual earning capacity of $76,436.78, which was calculated by adding on a 3% yearly adjustment upward of her East Lampeter salary covering the years since she left the

position. She had applied for the Lebanon job in October of 2011; she was hired in February of 2012 well prior to their separation. When he learned that she had applied to Lebanon County, Father expressed doubts to her as to whether she could get the job after what happened in East Lampeter.

The narrative of why and how Mother left her East Lampeter position is not a simple one. It involved the failure of her marriage, her drinking heavily from 2011 into 2013,[1] a romantic involvement with a fellow officer, and negligent damages to a police cruiser which she then lied about to her superior. When she finally told the truth, she was temporarily suspended and reduced to patrol status. Subsequently, she hurt her back and went on light duty. During that time she went into rehab for her drinking. While she was in rehab, Father went to see her immediate supervisor. Absent a waiver or a release from Mother the two men discussed her drinking problem and the details of Wife's working difficulties and misconduct. The two men decided that Father would convince her to resign, which she did on December 21, 2011. Had she not resigned, she would have been terminated and would have lost her pension. She hasn't had a drink since September of 2012.

Trial Court Opinion ("T.C.O."), 7/16/2014, at 1-3 (citations to notes of testimony omitted; minor modifications to punctuation).

Following the hearing, the trial court issued its May 12, 2014 order which set Father's child support and APL obligations. Father filed two notices of appeal. The first, filed on June 9, 2014, was docketed at 1196 MDA 2014. Father filed a second notice of appeal, identical to the first except for an

_____

[1] Mother testified that she stopped drinking in September 2012. Notes of Testimony, 3/25/2014 & 5/2/2014, at 28. Later, Mother said she stopped drinking in September 2013. *Id.* at 40. However, based upon Mother's testimony that she celebrated eighteen months of sobriety on March 15, 2014, *id.* at 28, we assume September 2012 is the intended date.

amended certificate of service, on June 12, 2014, which was docketed at 997 MDA 2014.[2] The trial court ordered, and Father timely filed, a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Father raises the following issues for our review:

1. Whether the Trial Court abused its discretion and/or committed an error of law by failing to award a downward deviation to the Support Order as a result of Mother's receipt of a lump sum of $65,000.00 from her own mother as well as additional financial assistance received from her mother for attorney fees and litigation expenses in the pending matter.

2. Whether the Trial Court abused its discretion and/or committed an error of law by failing to award a downward deviation in the child support and/or credit Father for his post-separation payment of extra-curricular activities for the minor children and contributions to the 529 accounts (TAP accounts), when they are the same activities the children participated in for at least two years prior to the parties' separation, both parents are in agreement with the children's participation in the activities, they are consistent with the standard of living during the marriage, and the parties agree it is in the children's best interests to continue to participate in those activities.

3. Whether the Trial Court abused its discretion and/or committed an error of law by utilizing Mother's current income with the Lebanon County District Attorney's Office instead of assigning her an earning capacity consistent with her prior income with the East Lampeter Township Police Department in the calculation of the support order when the reduction in her income is based on Mother's willful misconduct and/or voluntary reduction in her income, and her failure to mitigate the loss of her income.

_____

[2] On August 7, 2014, this Court ordered the two docket numbers to be listed consecutively and permitted Father to file one brief. Father has done so. Because only one set of issues has been raised, we consolidate the two docket numbers and dispose of them together.

Father's Brief at 9-10.

Our standard of review for child support orders is as follows:

When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

*Kimock v. Jones*, 47 A.3d 850, 854 (Pa. Super. 2012) (citations omitted).

Father first challenges the court's failure to lower his child support payment based upon Mother's receipt of money from her mother. Father asserts that Mother was not credible regarding this money because Mother testified that it was a loan, but also provided a letter to her mortgage lender indicating it was a gift. Father claims that the trial court erred in relying upon Mother's characterization of the money. Father asserts that the money that Mother received lowers her mortgage obligation and legal bills and thus, provides her with additional disposable income which supports a deviation from the guideline support amount. Father's Brief at 33-40.

Income for the purposes of child support is defined as:

[C]ompensation for services, including, but not limited to, wages, salaries, bonuses, fees, compensation in kind, commissions and similar items; income derived from business; gains derived from dealings in property; interest; rents; royalties; dividends; annuities; income from life insurance and

endowment contracts; all forms of retirement; pensions; income from discharge of indebtedness; distributive share of partnership gross income; income in respect of a decedent; income from an interest in an estate or trust; military retirement benefits; railroad employment retirement benefits; social security benefits; temporary and permanent disability benefits; workers' compensation; unemployment compensation; other entitlements to money or lump sum awards, without regard to source, including lottery winnings; income tax refunds; insurance compensation or settlements; awards or verdicts; and any form of payment due to and collectible by an individual regardless of source.

23 Pa.C.S.A. § 4302.  Notably, this definition includes neither gifts nor loans. Because the money Mother received, whether a gift or a loan, is not income, Father argues that it should have supported a deviation.

There is a rebuttable presumption that the guideline calculation of child support is correct.  23 Pa.C.S.A. § 4322(b).  However, the trier of fact may deviate from the amount dictated by the child support guidelines.  This decision is guided by the following rule:

**(a) Deviation.**  If the amount of support deviates from the amount of support determined by the guidelines, the trier of fact shall specify, in writing or on the record, the guideline amount of support, and the reasons for, and findings of fact justifying, the amount of the deviation.

*Note:* The deviation applies to the amount of the support obligation and not to the amount of income.

**(b) Factors.**  In deciding whether to deviate from the amount of support determined by the guidelines, the trier of fact shall consider:

    (1) unusual needs and unusual fixed obligations;

    (2) other support obligations of the parties;

    (3) other income in the household;

(4) ages of the children;

(5) the relative assets and liabilities of the parties;

(6) medical expenses not covered by insurance;

(7) standard of living of the parties and their children;

(8) in a spousal support or alimony *pendente lite* case, the duration of the marriage from the date of marriage to the date of final separation; and

(9) other relevant and appropriate factors, including the best interests of the child or children.

Pa.R.C.P. 1910.16-5.

Mother testified that she received $65,000 from her mother for the down payment on her house. Notes of Testimony ("N.T."), 3/25/2014 & 5/2/2014, at 35.[3] Despite signing a "gift letter" for the mortgage company, Mother stated she intended to pay the money back. ***Id.*** Mother also acknowledged that her mother had given her money for her legal fees. ***Id.*** at 38.

The trial court found that the amounts Mother received were used as a down payment for her new residence and to defray the legal expenses stemming from her divorce. T.C.O. at 6-7. Because the court found that the money had been used, the trial court determined that it did not remain for Mother to use for day-to-day expenses and did not justify a deviation. ***Id.*** at 7.

---

[3] There are two volumes of testimony, but they are continuously numbered.

The record supports this determination. Further, Father offers no explanation why the statutory factors support such a deviation, other than his statement that Mother had more disposable income because her mortgage payments and legal bills are lower because of the money Mother received. *See* Pa.R.C.P. 1910.16-5(b). The trial court determined that Father did not rebut adequately the presumption that the guideline amount is correct. The court did not abuse its discretion in reaching that conclusion.

To the extent that Father asks us to determine the trial court erred in finding Mother to be credible, we note the following:

> [W]ith regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand. When the trial court sits as fact finder, the weight to be assigned the testimony of the witnesses is within its exclusive province, as are credibility determinations, [and] the court is free to choose to believe all, part, or none of the evidence presented.

*Mackay v. Mackay*, 984 A.2d 529, 533 (Pa. Super. 2009) (citations and quotation marks omitted). The record supports the trial court's credibility and weight determinations with regard to the deviation and we find no error.

Father next argues that the trial court erred in not awarding a deviation based upon Father's payment of extracurricular activities expenses and Father's contributions to the children's college savings plans. Father contends that Mother consented to the various activities in which the children are involved, and that, because Father solely has paid for the related expenses, he should have received a deviation in his support

obligation. Father also argues that the trial court underestimated the amount of these expenses. Father asserts that the court should have provided a deviation instead of ordering the parties to pay a proportionate share because Mother cannot be trusted to reimburse Father for expenses. Finally, Father contends that the court only addressed prospective, and not retrospective, extracurricular expenses. Father's Brief at 40-46.

The rule governing extra expenses provides as follows:

> **(d) Private School Tuition. Summer Camp. Other Needs.** The support schedule does not take into consideration expenditures for private school tuition or other needs of a child which are not specifically addressed by the guidelines. If the court determines that one or more such needs are reasonable, the expense thereof shall be allocated between the parties in proportion to their net incomes. The obligor's share may be added to his or her basic support obligation.

Pa.R.C.P. 1910.16-6(d). We have held that, when reasonable and consistent with a family's standard of living, extracurricular activities can constitute "other needs" to be allocated between the parties according to their respective incomes. *See Silver v. Pinskey*, 981 A.2d 284, 302 (Pa. Super. 2009).

Mother testified that she was aware of the children's activities, but that Father had never asked her to contribute to the costs. N.T. at 31. Mother stated that she was unaware of some of the children's activities because Father registered for them. *Id.* at 52. Mother agreed that reasonable expenses should be divided between the parties. *Id.* at 53-54.

Father testified that he and Mother have paid for the children's school lunches. *Id.* at 147. He also paid for the children's cell phones, batting lessons, ski club, and lacrosse. *Id.* at 150, 153, 155. Father testified that Mother was aware of these expenses and never objected to the children's involvement in the activities. *Id.* at 150-56. Father admitted that he had not requested any reimbursement from Mother. *Id.* at 158.

Here, the trial court ordered the parties to contribute to these expenses in proportion with their income when the parties agreed upon the child's participation in the activity. The trial court believed that the parties' agreement would ensure that the expenses were reasonable. T.C.O. at 7. Because reimbursement was contemplated, the court did not award a deviation. Rule 1910.16-6 contemplates adding fixed expenses to the obligor's basic support, but does not provide for lowering support upon the same basis. Although the trial court could consider a deviation, it was not an abuse of discretion for the court to conclude that reimbursement was the better option.

With respect to Father's contributions to a college savings plan, the trial court did not award a deviation. The trial court stated that, because it could not order Mother to provide support for post-secondary education, it would not order her to contribute to the college savings plan. T.C.O. at 7-8. There is no legal duty for a parent to provide a post-secondary education for a child, although a parent may assume such a duty voluntarily or contractually. *See W.A.M. v. S.P.C.*, 95 A.3d 349, 352 (Pa. Super. 2014).

Father essentially asks us to lower the amount of support available to the children now because he is saving for their college education. While we applaud Father's voluntary contributions to his children's future education, that decision should not reduce the children's support now.

As to Father's concern about past expenses, our courts have said that the effective date is the date the support complaint is filed and there is a strong presumption of retroactivity to the filing date. *See Christianson v. Ely*, 838 A.2d 630, 636 (Pa. 2003); *see also* Pa.R.C.P. 1910.17. We have also held that a court cannot impose a support obligation effective date prior to the filing of the complaint. *Kelleher v. Bush*, 832 A.2d 483, 485 (Pa. Super. 2003).

Here, Father seeks post-separation expenses. However, the effective date must be when Mother filed her support complaint. The trial court's order states that it is effective as of September 4, 2013. Order, 5/12/2014, at 3. The effective date on the order precedes the court's allocation of the extracurricular expenses. Therefore, by the court's order, any expenses for agreed-upon activities from September 4, 2013 onward were to be allocated between the parties. We find no error in the trial court's order with regard to extracurricular expenses.

Finally, Father argues that the trial court erred in using Mother's current earnings as her income for support, rather than assigning an earning capacity based upon her East Lampeter income. Father disputes the trial court's fact-finding regarding his discussion with Mother's employer and the

events that led to her resignation. Father contends that Mother willfully left her employment or would have been fired and that she should be held to an earning capacity equal to her salary at that employment rather than the reduced income she has from her Lebanon employment. Father argues that Mother has "manipulate[ed] the support system by obtaining a lower paying job." Father's Brief at 47-64.

Our rules provide that:

When either party voluntarily assumes a lower paying job, quits a job, leaves employment, changes occupations or changes employment status to pursue an education, or is fired for cause, there generally will be no effect on the support obligation.

Pa.R.C.P. No. 1910.16-2(d)(1). "A party may not voluntarily reduce his or her income in an attempt to circumvent his support obligation." *Grigoruk v. Grigoruk*, 912 A.2d 311, 313 (Pa. Super. 2006) (citing *Woskob v. Woskob*, 843 A.2d 1247, 1253–54 (Pa. Super. 2004)). "However, when a parent has not voluntarily reduced his income to circumvent his support obligation the court can consider reducing the parent's child support obligation." *Smedley v. Lowman*, 2 A.3d 1226, 1228 (Pa. Super. 2010) (citation and quotation marks omitted).

Mother testified that she discussed her resignation with Father, and that Father was concerned about her pension. N.T. at 22. Mother stated that she resigned to keep her pension and to keep a termination off her record. *Id.* Mother's supervisor, John Bowman, confirmed that Mother would have been dismissed if she had not resigned. *Id.* at 82, 86. Mother

also testified that Father knew she had applied for the Lebanon job, and that Father did not believe she would get the job because of her prior misconduct. *Id.* at 23-24. Between starting the Lebanon job and the parties' separation, Father never asked Mother to look for a higher-paying job. *Id.* at 30-31.

Father testified that he did not want Mother to accept any job that paid less than the East Lampeter job. *Id.* at 162. However, he confirmed that he was surprised that she was offered the Lebanon job based upon her misconduct at the prior job. *Id.* at 163. Father stated, "She was lucky to get that [job]." *Id.* at 182.

The record supports the trial court's fact-finding. Mother's employer testified that his notes from his meeting with Father indicated that Father was going to attempt to convince Mother to resign. *Id.* at 100. Father confirmed that, if Mother was going to be terminated, Father "was going to tell her to resign." *Id.* at 180. Mr. Bowman also admitted that Mother never authorized him to speak with Father regarding her employment. *Id.* at 96. Instead, Mr. Bowman testified that he thought he could discuss Mother's employment status with Father because Mother and Father were married. *Id.* at 96-97. Mr. Bowman also testified that Father told him that Mother's injury, for which she received light duty, was not work-related, and that Father said "very damaging things about [Mother]," "damning stuff for him to be coming in and saying." *Id.* at 97, 99.

Here, the trial court found that Mother had to resign or face termination due to her conduct. The trial court also opined that, given Mother's conduct in her East Lampeter job, Mother would have been hard pressed to find a similar job. Further, Mother resigned and accepted the lower-paying Lebanon job prior to the parties' separation when no support obligation was contemplated. Therefore, the trial court concluded that Mother did not voluntarily reduce her income to support obligation. T.C.O. at 5.

We agree with the trial court. It is difficult to believe that Mother accepted a job in February 2012 to lower her income for the purposes of child support when the parties did not separate until May 2013 and a support complaint was not filed until September 2013. Further, while Father may not have been happy that Mother took a lower-paying job, he recognized that Mother was lucky to get the Lebanon job. Given that Mother did not reduce her income for the purposes of avoiding a support obligation and that she took the job that was available to her, the trial court did not abuse its discretion in using Mother's current salary as her income for support.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/30/2014