J-A29034-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| SHANNON MICHELLE COURSON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ADAM REKASIE | : | |
| | : | |
| Appellant | : | No. 246 WDA 2025 |

Appeal from the Order Entered March 13, 2025
In the Court of Common Pleas of Allegheny County, Family Court
at No. FD-21-003444-017, PACSES No. 671300922

BEFORE:  OLSON, J., DUBOW, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:  **FILED: JANUARY 8, 2026**

Adam Rekasie (Father) appeals from the order which overruled his exceptions to the report and recommendation of the divorce hearing officer (DHO)[1] and finalized his child support obligation for the parties' four-year-old daughter (Child).  We affirm.

*Case History*

Child was born in May 2021 to Father and Shannon Michelle Courson (Mother).  Mother filed for child support approximately one month after Child's birth.[2]  On July 27, 2021, an order was entered which required Father to pay $2,035 per month ($1,850 for ongoing support and $185 toward arrears).  The order did not establish the parties' incomes and was entered following a

---

[1] Although the parties were never married, the child support matter was assigned to a "Divorce Hearing Officer."  **See** Order, 11/16/23, at 1.

[2] Child resides exclusively with Mother.

support conference where "[b]oth parties' attorneys participated by telephone and consented to th[e] order." *See* Order, 7/27/21, at 3. The parties have since filed various pleadings related to child support. Relevant to this appeal, Mother petitioned to modify child support on September 14, 2023, and Father petitioned to modify child support on October 2, 2023. The DHO conducted two days of hearing on the petitions on March 6, 2024, and March 20, 2024.[3]

On May 16, 2024, the DHO issued a report and recommendation (May Report) finding that Mother's net income was $8,876.44 per month, Father's net income was $20,710.13 per month, and Father's corresponding child support obligation was $2,635.92 per month. Father filed exceptions to the May Report. On August 20, 2024, the trial court sustained Father's exception "as to the improper calculation of his monthly net disposable income." Trial Court Opinion (TCO), 7/7/25, at 2. The trial court explained:

> [Father's] exception was grounded in the DHO's failure to consider the factors set forth in *Ewing v. Ewing*, 843 A.2d 1282 (Pa. Super 2004), *Perlberger v. Perlberger*; 626 A.2d 1186 (Pa. Super. 1993), and *Snively v. Snively*, 212 A.2d 278 (Pa. Super. 1965)[,] in determining whether [Father] had voluntarily reduced his income pursuant to [Pa.R.Civ.P.] 1910.16-2(d)(1).

*Id.* Accordingly, the trial court remanded the matter to the DHO for reconsideration of Father's income and "the factors set forth in the above-stated case law." October Report and Recommendation (October Report), 10/2/24, at 1.

---

[3] As the notes of testimony from both days are numbered sequentially and without interruption, we will refer to them collectively as "N.T."

On October 2, 2024, the DHO issued the October Report which discussed applicable case law, and found "the overarching principles in these three cases" to be consistent with the DHO's prior calculation of Father's income. *Id.* at 2. The DHO adopted and incorporated the May Report in the October Report. *See id.* Father again filed exceptions, and the trial court "revisit[ed] the issue of whether the DHO was constrained to strictly adhere to Rule 1910.16-2(d)(1) in determining whether [Father's] voluntary employment change would factor into the calculation of his monthly income." TCO at 2. After "review[ing] the issue a second time," the trial court "was persuaded by the detailed analysis undertaken by the DHO in the October [R]eport." *Id.* at 3. By order entered on March 13, 2025, the trial court overruled Father's exceptions, adopted the DHO's findings, and directed Father to pay child support of $2,635.92 per month. Father timely appealed and filed a concise statement of errors pursuant to Pa.R.A.P. 1925.

Father presents the following issues for review:

1. Did the [t]rial [c]ourt/[DHO] abuse its discretion/err as a matter of law by improperly calculating Mother's [n]et [d]isposable [i]ncome and earning capacity?

2. Did the [t]rial [c]ourt/[DHO] abuse its discretion/err as a matter of law by improperly calculating Father's [n]et [d]isposable [i]ncome by failing to correctly apply the two-prong test, failing to properly understand and account for the anomaly event, and misapplying the earning capacity standard?

3. Did the [t]rial [c]ourt abuse its discretion/err as a matter of law by not correcting the [DHO's] error in determining both parties' net disposable income and thus failing to calculate a proper child support amount and improper percentage of income?

Father's Brief at 6.

*Discussion*

The essence of Father's argument is that the trial court erred by adopting the DHO's calculations of "both Mother's and Father's incomes."[4] Father's Brief at 14. Father claims the DHO made "miscalculations" which "rest on misstatements of fact, misapplications of law, and disregard of binding precedent, which together taint the entire child support award." *Id.*

In contrast, Mother argues that "the child support order was based on fact and is consistent with Pennsylvania law." Mother's Brief at 12. Mother states that her "6-figure income was tied to 2 years of income supported by government-issued documents," and that Father's income "in the 6-figure category, was similarly supported." *Id.* Mother stresses that Father's "chief objection is that he took a lower paying job and that should be considered when setting how much money he must pay each month." *Id.*

We review the trial court's order for an abuse of discretion. We have explained:

> When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a

_____

[4] In the scant argument section corresponding to his third issue, Father cites no legal authority and summarily asserts that the trial court's "failure to properly determine the [p]arties' net incomes … created … errors" in the calculation of Father's obligation for unreimbursed medical expenses, childcare and arrears. *See* Father's Brief at 63-64.

conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

*Sichelstiel v. Sichelstiel*, 272 A.3d 530, 534 (Pa. Super. 2022) (quoting *Silver v. Pinskey*, 981 A.2d 284, 291 (Pa. Super. 2009) (*en banc*)). A finding that the trial court abused its discretion "is not lightly made," and must be supported "upon a showing of clear and convincing evidence." *Dennis v. Whitney*, 844 A.2d 1267, 1269 (Pa. Super. 2004) (citation omitted).

We also recognize that a DHO's recommendation is "advisory and not in any way binding on the trial court." *Ewing*, 843 A.2d at 1286 (citation omitted). It is the "sole province and the responsibility of the [trial] court to set an award of support," and "even if the evidence before the [DHO] is adequate to support her recommendation, the trial court need not adopt it." *Id.* When calculating a party's income available for child support, the factfinder shall deduct specific items from gross income – *e.g.*, federal, state, and local income taxes; F.I.C.A. payments; and non-voluntary retirement payments. *See* Pa.R.Civ.P. 1910.16-2(c)(1).[5]

*Mother*

The trial court adopted the DHO's determination that Mother's net income was $8,876.44 per month. Father challenges the calculation on the

---

[5] In this case, the DHO confirmed, "[S]o everyone's aware, I do my own calculations on the tax and things like that." N.T. at 62.

basis that the DHO improperly relied on Mother's 2023 earnings, rather than her 2024 projected salary. Father argues:

> Specifically, the [DHO] incorrectly used Mother's 2023 wages, which were significantly lower due to her temporary employment in a lesser-paying position, instead of her target salary for 2024, which is consistent with her earning history, for Mother's net disposable income…. The 2023 dip in Mother's earnings resulted from a temporary, four-month stint in a lesser-paying position….

Father's Brief at 18. Father claims that by "refusing to use Mother's 2024 target salary, the [DHO] failed to account for Mother's earning history, the context of her 2023 earnings, and her actual earnings for 2024." *Id.* at 23. The record does not support Father's argument.

Mother testified that her household is comprised of her and Child. N.T. at 10. Mother has worked for several years as a sales and marketing representative with a homebuilding company, NVR, commonly known as Ryan Homes. *Id.* at 33. She testified that her compensation varies because "you always hope in sales," and there are "good years and bad years." *Id.* at 46. Mother provided her W-2 tax statement from 2023, as well as her last pay statement for 2023, which showed earnings of $145,334. *Id.* at 30. She explained that for a short period she worked as an online sales consultant, but returned "to the role [she] held for the majority of [her] time with NVR, which is a sales and marketing representative position." *Id.* at 33. Mother stated that NVR "let go a lot of employees in February of 2023. We were overstaffed. The market had changed. We were not selling as many homes. We didn't have as many land deals." *Id.* at 44.

Regarding 2024, Mother explained that NVR "increased our target-based compensation to $230,[000,] and they eliminated the President's Club bonus. However, they have lowered the per sale dollar amount. So basically, you have to sell more to make that target pay." *Id.* at 34. According to Mother, her target compensation for 2024 was $230,000, but that figure was dependent on her sales. *Id.* at 38-39.

The DHO's calculation of Mother's income is consistent with the evidence. The DHO explained:

> [Mother] is employed as a Sales & Marketing Representative for NVR. She has a target salary in 2024 of $230,000. [Mother] testified that she has consistently achieved her target salary and has received the available bonuses. She credibly testified that NVR changed their compensation structure such that the President's Club Bonus has been eliminated, but the base compensation for sales representatives has increased. Despite the President's Club Bonus program being eliminated, she is eligible to receive periodic bonuses. In 2023, [Mother's] gross income per her W-2 was $138,709.90. (Exhibit 1, Box 16). However, her end of year paystub indicates gross wages in the amount of $145,334.32. (Exhibit 3). [Mother] submitted her January 2024 paystubs that detail $15,500 in regular earnings and sales advances and $5,250 in quarterly bonuses. (Exhibit 3, pp. I, 3). [Mother] testified that for a brief period in 2024, she was a salaried employee, but she no longer works that position. This [DHO] finds that [Mother's] earnings shall be calculated based upon her gross wages from 2023. This [DHO] declines to use [Mother's] target salary, as that represents a significant increase from her actual earnings in 2023 and is speculative. To that end, this [DHO] finds [Mother's] income to be as follows: $145,334 gross/year; $12,111.19 gross/mo. - $1,806.85/mo. Federal tax - $380.29/mo. Pennsylvania tax - $121.11/mo. [L]ocal tax - $926.50/mo. FICA/Medicare = $8,876.44 net per month.

May Report at 2.

The record supports the trial court's acceptance of the DHO's income calculation. The trial court expressly adopted the DHO's "detailed" and "well-reasoned analysis." **See** TCO at 3. This Court "will not interfere with the broad discretion afforded the trial court absent an abuse of discretion or insufficient evidence to sustain the support order." **Silver**, 981 A.2d at 291. Consequently, we reject Father's challenge to the calculation of Mother's income.

_Father_

Father's household consists of Father, his wife, and his wife's four children. N.T. at 66. Father is a licensed financial advisor. **Id.** at 66-67. Until 2023, Father was employed with Citizens Securities. **Id.** at 77. In 2020, Father earned gross annual income of $351,236; in 2022, his gross annual income was $350,648. **Id.** at 68, 70.

Father testified that in February 2023, he left Citizens voluntarily and "went from being an employee to an independent contractor" with Cetera Investments. **Id.** at 71, 73. Father attributed his decision to change jobs to "what was happening at Citizens." **Id.** at 76. He stated that his "intention was to, hopefully, make more money at a higher commission rate." **Id.** He explained that when he "signed up with Cetera," Cetera "gave" him $190,000 for "transition assistance." **Id.** at 74. He testified that there were no restrictions on how he spent the $190,000. **Id.** at 75. Father recounted spending $12,000 on a trip to Bermuda with his wife, and $38,000 on a trip

to Sarasota and Disney World with his wife and her four children. *Id.* at 95-96. Father also testified to buying a new Suburban vehicle. *Id.* at 97.

According to Father, he performs "the same type of work" at Cetera as he did with Citizens, but his income is "commission based" and "depends on the market." *Id.* at 74, 80. He described his income as "completely variable" because it "depends on clients" and "different account types." *Id.* at 80. Father stated that in 2024, he was "not expecting to make greater money" and "[i]t will be slow if it does come." *Id.* at 89.

Father responded to questioning from Mother's counsel as follows:

Q. [In] the last three months[, since] January of 2024, you made almost $21,000; did you not?

A. Yes. …

Q. All right. We don't have any documentation, but it's your testimony today under oath that for February of 2024, you only made around [$]7,000?

A. Correct.

Q. Now in December of 2023, you made over $14,000, right?

A. Correct.

Q. And November of 2023, $20,293.85, correct?

A. Correct.

Q. So if we keep going down, essentially over the last six months, your worst month was in October when you made $11,290.81, correct?

A. Correct.

*Id.* at 91.

Father called Beth Mascetta to testify as an expert in income calculation. *Id.* at 98. Ms. Mascetta testified that Father hired her in February 2023 to determine his "disposable income for purposes of child support." *Id.* at 107. Ms. Mascetta prepared a report based on her "independent research as an expert as well as conversations with [Father]." *Id.* at 101. Ms. Mascetta recognized that Father's income "differed significantly from what he had earned in prior years." *Id.* at 106. Ms. Mascetta projected Father's net disposable income in 2024 to be $99,084 or $8,257 per month. *Id.* at 117.

The DHO imputed Father with a net monthly earning capacity of $20,710.13, based on his earnings with Citizens. The trial court adopted this figure. The trial court recognized Rule 1910.16-2, which provides that a factfinder shall not reduce a party's net income for child support simply because the party voluntarily assumed a lower paying job. Pa.R.Civ.P. 1910.16-2(d)(1); TCO at 2. Under the Rule, "if a party voluntarily accepts a lower paying job, there generally will be no effect on the support obligation." *Grigoruk v. Grigoruk*, 912 A.2d 311, 313 (Pa. Super. 2006). This Court has explained:

> It is well settled that "to modify a support obligation based upon reduced income, a petitioner must first establish that the voluntary change in employment which resulted in a reduction of income was not made for the purpose of avoiding a child support obligation and secondly, that a reduction in support is warranted based on [the] petitioner's efforts to mitigate any income loss." *Grimes v. Grimes*, 596 A.2d 240, 242 (Pa. Super. 1991). Effectively, [the petitioner] "must present evidence as to why he or she voluntarily left the prior employment and also as to why the acceptance of a lower paying job was necessary." *Id.* Where

a party willfully fails to obtain appropriate employment, his or her income will be considered to be equal to his or her earning capacity. Pa.R.Civ.P. 1910.16–2(d)(4). A determination of earning capacity must consider the party's age, education, training, health, work experience, earnings history, and child care responsibilities. ***Id.***

***Kersey v. Jefferson***, 791 A.2d 419, 423 (Pa. Super. 2002).

Father argues that the trial court erred as a matter of law because the DHO "failed to apply the required two-prong analysis to Father's change of employment, omitting any evaluation of whether Father made reasonable efforts to mitigate his income loss." Father's Brief at 27. Father also argues that the DHO erroneously assigned him "an earning capacity based on his anomalous 2022 income." ***Id.*** at 28.

First, Father cites ***Ewing***, ***supra***, in asserting that the DHO "incorrectly evaluate[d] the second prong." ***Id.*** at 32. Father recognizes that Rule 1910.16-2 "was recently amended."[6] ***Id***. at 33. However, he asserts that ***Ewing*** is binding authority. As such, Father claims that the trial court and DHO failed to conduct "a proper, fact-specific analysis" and "consider mitigation." ***Id.*** at 36, 41. He states:

> Father mitigated his loss of income by maintaining continued and uninterrupted full-time employment; and, further remaining in his position and chosen profession since adulthood. Father parlayed

---

[6] The amendment of Pa.R.Civ.P. 1910.16-2 in effect from October 25, 2024 through December 31, 2025, does not impact the substance of subsection (d)(1) regarding a party's voluntary reduction in income, and the amendment effective January 1, 2026, states that the "trier-of-fact shall not adjust a party's monthly net income for voluntary decreases in income due to a situation over which the party has control, including, but not limited to, assuming a lower paying job…." Pa.R.Civ.P. 1910.16-2(d)(1).

his then current book of business and inflated salary to land him the best job he could with the highest payout rate before his book was cut in half [at Citizens,] making him less marketable.

*Id.* at 41. In response, Mother states that "Father goes to great lengths to justify … taking a lower paying job … with the hope of making 'more money' later." Mother's Brief at 27. Mother emphasizes that "Father does not discuss why finding a job with a comparable salary was not possible." *Id.* Our review reveals no error or abuse of discretion.

Prior to leaving Citizens, Father's gross annual income was approximately $350,000. N.T. at 68, 70; *see also Portugal v. Portugal,* 798 A.2d 246, 250 (Pa. Super. 2002) (reiterating that a determination of earning capacity must consider the party's age, education, training, health, work experience, earnings history, and child care responsibilities). As the trial court observed:

[Father] was employed by Citizens Financial Services as an investment advisor until February, 2023, when he left Citizens for Cetera Investments following a restructuring that had occurred at Citizens. The restructuring raised concerns by [Father] that he would lose a substantial amount of business because of the restructuring, and that employment at Cetera, while initially resulting in a decrease in income, would result in a significant increase in income over time. The DHO had determined that while [Father's] reduction in income was not undertaken to avoid a support obligation, it was nevertheless a voluntary reduction that resulted in an income calculation consistent with Rule 1910.16-2(d)(1). [Father's] income calculation, then, was predicated upon the higher income that he generated while employed by Citizens.

TCO at 1-2.

Father criticizes the DHO for not considering his efforts to mitigate his reduced earnings. However, he disregards that it was his burden to "present evidence as to why he … voluntarily left the prior employment and also as to why the acceptance of a lower paying job was necessary." *Ney v. Ney*, 917 A.2d 863, 866 (Pa. Super. 2007). While Father alluded to future changes at Citizens which prompted his departure, his testimony about mitigating prospective losses was limited to obtaining his role as an independent contractor with Cetera. Father did not mention any other efforts to obtain more lucrative employment, and hired Ms. Mascetta, who testified that Father's net disposable income in 2024 would be $99,084 or $8,257 per month. *Id.* at 117.

We discern no error. The DHO referenced the relevant legal authority, including *Ewing*, in stating that the "overarching principles [of the case law] recognize … a party's efforts to maintain or replace the lost earnings and his or her ability to maintain a certain standard of living." October Report at 2. The DHO found that Rule 1910.16-2(d)(1) was binding and precluded a downward adjustment in Father's income. Further, the DHO noted:

> [T]his [DHO] cannot conclude that application of Rule 1910.16-2(d)(1) is inappropriate given the circumstances of this case. [Father's] testimony that he, his wife, and her four children have adjusted their lifestyle to live within his current earnings lacks credibility. [Father] spent the entirety of his transition assistance funds providing his wife and her four children with, among other things, a $38,000 Disney/Universal vacation, a $12,000 destination wedding, and remodeling their residence. Further, it does not appear that their lifestyle has been modified in any

appreciable manner. [Child] should be treated in a similar fashion.

*Id.*

Finally, Father challenges the DHO's reliance on "his anomalous 2022 income." *Id.* at 28. The DHO expressly found that Father's 2022 earnings were not an anomaly. May Report at 3. The DHO explained:

> [Father] has had earnings in this range since 2019. When [Father] left Citizens, he had not yet experienced a decrease in his earnings, nor had he received formal notification that a non-voluntary income reduction was imminent. As such, he had not actually experienced the involuntary reduction in earnings that he suspected was forthcoming. While this [DHO] acknowledges that [Father's] concerns may have ultimately been proven to be valid, the record does not support this conclusion.

*Id.*

As the record supports the DHO's rationale, the trial court did not err or abuse its discretion in accepting the DHO's calculation of Father's income based on his earnings in 2022.

For the above reasons, we affirm the order overruling Father's exceptions and finalizing Father's child support obligation.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 01/08/2026

- 14 -