Elisha L. NOVINGER, Appellee,

v.

William A. SMITH, Appellant.

Superior Court of Pennsylvania.

Submitted April 18, 2005.

Filed Aug. 2, 2005.

Brian W. Ulmer, Lewisburg, for appellant.

Brian L. Kerstetter, Lewisburg, for appellee.

Before: FORD ELLIOTT, KLEIN, and KELLY, JJ.

OPINION BY KLEIN, J.:

¶ 1 William A. Smith (Father) appeals from the order affirming an earlier modified support order directing him to pay child support to Elisha L. Novinger (Mother) and assigning him a $40,000/year earning capacity. We conclude that the

trial court abused its discretion in assessing Father an earning capacity $15,000 greater than his actual current income and greater than the income he previously made almost his entire career as a carpenter. Even if a person loses a job through his or her own fault, after several years it is necessary to reevaluate the situation by considering his or her earning capacity relative to the employment market at the later time. Therefore, we reverse and remand for further proceedings.[1]

¶ 2 In February 2004, Father filed a petition to modify an existing child support order. The trial court issued an interim order, assigning Father an earning capacity of $40,000/year. At a *de novo* hearing on his petition, Father testified that he had worked as a carpenter/roofer all his life, except for one year, from 1999 to 2000, when he worked as a welder earning $40,000/year. (N.T., 8/30/04, at 8.) He testified that he got the welding job with the help of his brother-in-law, who worked at the company and "pulled some strings." (*Id.*) Father had neither formal training nor certification as a welder. On March 30, 2000, Father took a leave of absence from the welding job to enter an inpatient drug rehabilitation program. On April 17, 2000, he was released from the program and was due back at work at 3:00 p.m. that afternoon. Upon his release at 2:00 p.m., Father stopped by his house to attend to a few personal matters. While he was there, his boss called and fired him for being late. (*Id.* at 12–17.) Thereafter, Father resumed his work as a self-employed carpenter/roofer earning $25,000/year. (*Id.* at 6–7.) At the conclusion of the hearing, the trial court entered an order affirming the prior order assigning Father a $40,000/year earning capacity.

This was an abuse of discretion. *See Woskob, supra.*

¶ 3 The trial court improperly based its determination on a job that Father held for only one year more than five years ago. The testimony was uncontradicted that Father got the welding job only because his brother-in-law "pulled some strings." Since losing that job four years ago, Father has not remained unemployed but has been a self-employed carpenter/roofer earning approximately $25,000/year. This was the craft he practiced and the income he made before he acquired the welding job.

¶ 4 The trial court overlooks the fact that the primary focus should be on the circumstances surrounding Father's employment status immediately before he filed the petition for modification. *See, e.g., Kersey v. Jefferson,* 791 A.2d 419 (Pa.Super.2002); *Grimes v. Grimes,* 408 Pa.Super. 158, 596 A.2d 240 (1991). We note that Father did not petition the trial court for a support reduction in 2000 when he lost his welding job. Rather, he searched for additional, commensurate welding jobs for which he was ultimately unqualified due to his lack of formal training. (N.T., 8/30/04, at 8–9.) When that proved unsuccessful, he resorted to his prior, lifelong career as a carpenter/roofer. It was only after four years of self-employment at $25,000/year that Father filed the instant petition for modification of support. *See* Pa.R.C.P. 1910.16–2(d). Father's actions do not demonstrate a deliberate attempt to shirk his financial responsibility to his children.

¶ 5 We conclude that the trial court abused its discretion in holding Father to an earning capacity based on a job that he held for one year—more than four years

---

1. We review a trial court's child support order for an abuse of discretion. *Woskob v.*

*Woskob,* 843 A.2d 1247, 1251 (Pa.Super.2004).

ago—for which he was unqualified and had no formal training. Rather, the determination should be made on the basis of Father's education, qualifications, training and what he could reasonably earn in today's market in similar positions in his field. Given that four years have now passed, we believe the time has come to assess Father a more realistic earning capacity based on his present qualifications and circumstances.

¶ 6 This is a far different circumstance than when the party seeking a support reduction is imprisoned. In such cases, the Supreme Court has determined that criminal behavior should not be rewarded and when released, the party should start paying on arrears. *See Yerkes v. Yerkes*, 573 Pa. 294, 824 A.2d 1169 (2003); *see also Willoughby v. Willoughby*, 862 A.2d 654 (Pa.Super.2004). Of course, when imprisoned, a party cannot look for employment. When a person quits a job or is fired for an infraction, the public policy is different. The person should not have to pay forever for losing employment. At some point, the courts should take another look at his or her true earning capacity.

¶ 7 We also question the trial court's conclusion that if Father had not been late for work that day, he would still have his $40,000/year welding job. The company fired him, without any warning, when he did not show up exactly at 3:00 p.m. on the day of his release from rehab after being away for 17 days. Father testified that he stopped home before heading to work to change his clothes and take care of a few personal matters after his 17–day absence. Father testified that as soon as he walked in the house that afternoon, his boss called to say he was fired. In its opinion, the trial court even noted that the firing was

somewhat rash, stating, "Admittedly, it seems odd that an employer would fire a person for what seems to be a small infraction." (Trial Court Op., 10/29/04, at 3 n. 2.)[2] Considering that statement, one might think the trial court would have found that the discharge was not Father's fault. However, whether it was or was not Father's fault, four years later it is appropriate to look again at his true earning capacity.

¶ 8 In *Ewing v. Ewing*, 843 A.2d 1282 (Pa.Super.2004), this Court held that where a parent is fired for cause, in order for the trial court to reduce his or her child support obligation, the parent must establish that he or she attempted to mitigate lost income. *Id.* at 1288. In that case, we noted that the father's termination, although for cause, did not automatically preclude a reduction in his support obligation. However, because the trial court failed to consider the mitigation testimony offered at the hearing, we remanded for further proceedings to address whether and to what extent Father had established mitigation. *Id.*

¶ 9 In this case, there was little mitigation evidence presented at the hearing, as the primary focus of the parties and the trial judge was whether or not Father was terminated for cause. That, however, does not end the inquiry. *See Ewing, supra.* As noted above, Father testified that after his firing, he searched for additional, commensurate welding jobs for which he was ultimately unqualified due to his lack of formal training. (N.T., 8/30/04, at 8–9.) When that proved unsuccessful, he went back to working as a self-employed carpenter/roofer earning $25,000/year. (*Id.* at 6–7.) The trial court did not make find-

---

**2.** The prompt firing would be even more suspicious if it was his ex-wife's brother who had gotten him the job. It is not clear from the record which "brother-in-law" worked at the welding company.

**1258**

ings of fact or conclusions of law, either at the hearing or in its opinion, regarding Father's mitigation evidence. Therefore, we must remand.

¶ 10 Accordingly, we vacate the support order and remand for further proceedings to reconsider and recalculate Father's present earning capacity in light of the mitigation evidence.

¶ 11 Order vacated. Case remanded with instructions. Jurisdiction relinquished.