J-S11017-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ALYSIA A. SCHMIDT | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOEL T. SCHMIDT | |
| Appellant | No. 1267 MDA 2014 |

Appeal from the Order Entered June 25, 2014
In the Court of Common Pleas of Adams County
Civil Division at No(s): 11-DR-21
342112197

BEFORE: PANELLA, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.:                    **FILED MAY 21, 2015**

Joel T. Schmidt (Father) brings this appeal from the order entered June 25, 2014, in the Court of Common Pleas of Adams County, that assessed Father's support obligation based on his earning capacity. The trial court set Father's earning capacity at $91,000.00, and determined his support obligation, effective as of March 28, 2014, was $2,645.00 plus $45.00 on arrears, for a total monthly support obligation of $2,690.00. Father contends the trial court abused its discretion in (1) assigning him an earning capacity of $91,000.00, and (2) failing to assign an earning capacity to Alysia A. Schmidt (Mother). Based upon the following, we affirm.

The facts and procedural history of this case have been summarized by the trial court, as follows:

Mother filed a Complaint for Support on January 11, 2011, which was docketed on January 18, 2011, seeking support for Mother and the parties' three children. By Orders of Court dated January 14, 201[1], a support conference was scheduled for February 8, 2011. On February 11, 2011, an Interim Order of Court was entered for support of Mother and the children in the amount of $3,483.00 per month, consisting of $3,190.00 per month for current support and $293.00 per month for arrears, based on a net monthly income of $6,459.97 for Father and $0.00 for Mother. The conference officer noted in the attached Summary of Trier of Fact that because Mother had not worked since 2001, because it was a family decision for her to stay home, and because the children have some additional needs, that Mother was held to a zero earning capacity. The conference officer also noted that Father agreed that Mother should not be held to any earnings at the time.

…

On March 28, 2014, Mother filed a Petition for Modification of an Existing Support Order, which was docketed on March 31, 2014. In the petition, Mother alleged that she was entitled to an increase in support and requested a review of the support order because it had been over three years since the current support order was entered and her monthly expenses had increased. By Order of Court dated April 1, 2014, a support conference was scheduled for April 22, 2014. After conference, an Interim Support Order dated April 29, 2014 was entered. The order set Father's monthly support obligation at $2,289.00 per month, consisting of $2,099.00 per month current support and $190.00 per month arrears, and recognized that Father's monthly net income is $3,736.56 and that Mother's net monthly income remained at $0.00. In the Summary of Trier of Fact, the conference officer indicated that Father left his previous employer because the contract for the job was expiring, and that Mother stated that she doesn't work because she takes care of the children's needs. The conference officer also noted that Father's average gross income was $2,263.13 biweekly and that Father's recruitment allowance of $8,104.35 was included in his income for support purposes.

On May 20, 2014, Mother filed a Demand for Hearing, which was docketed on May 21, 2014. In Mother's Demand for Hearing, Mother alleged that Father's monthly support obligation is not

enough to raise the parties' three children. By Order of Court dated May 21, 2014, a de novo hearing was scheduled for June 25, 2014 with this Court.

On June 25, 2014, the de novo hearing was held, with Mother attending in person and represented by Attorney Yannetti and Father attending without his attorney by way of speakerphone from California. The procedural history of the case was reviewed on the record. Father had been working on a contract job, which was set to expire. Rather than become unemployed, Father chose to obtain other employment at a lower wage. The current support order had been calculated using Father's new income from the new employment, which resulted in a significant reduction in support for Mother. Mother objected to the lower amount of support because she did not feel it was enough for her to take care of herself and the parties' three children.

The conference officer indicated that the support amount under the prior order had been $3,190.00 per month plus arrears, and that the current support amount under the current order is $2,099 per month, a difference of $1,091.00 per month. … The conference officer indicated that Father's prior salary was $115,000.00 per year, and that Father's new salary was $58,841.38 per year plus a recruitment allowance of $8,100.00 that was included in his income for the calculation of the support order. The conference officer also stated that Father's prior employment had been with L3 Communications, and his current employment is with the Federal Bureau of Prisons.[1]

…

… [T]his Court confirmed several facts with Father. This Court asked Father if he had been making $115,000.00 per year working for L3 Communications for a couple of years, and Father indicated that he had been making closer to $175,000.00 per

_____

[1] We note that even though Mother filed a petition for modification, seeking an increase in support, the conference officer had authority to decrease Father's support obligation. *See* Pa.R.C.P. 1910.19(c) ("Pursuant to a petition for modification, the trier of fact may modify or terminate the existing support order in any appropriate manner based upon the evidence presented without regard to which party filed the petition for modification.")

year. Father indicated that due to a decrease in funding for the war effort, Father's salary went from over $173,000.00 per year to about $108,000.00 per year. Father indicated that the prior order based on his income of $115,000.00 was for the job he took in California which no longer exists. Father confirmed that he is currently working for the Federal Bureau of Prisons making $58,841 per year plus the recruitment bonus, totaling about $66,900.00 as used for his income in the current support order.

…

… Father indicated generally that the prior jobs he was able to take with higher salaries in support of the war effort were no longer available. This Court asked Father what the least amount of money he has made annually in the last ten years was, and Father indicated that his current job was the least amount. Father described his current position as a worst case scenario, and indicated that he had been searching for employment using recruiters and the internet. This Court asked Father about his line of work, and Father indicated that he had a degree in criminology and a career in intelligence. …

…

Mother indicated that it would be hard for her to obtain employment at the current time. Mother related that one of the children is not receiving the services he needs, that the children are on waiting lists for treatments, and that one child has more special needs than the others. …

After the hearing this Court entered the Order of Court dated June 25, 2014. This Court indicated in the order that the prior Order of Court dated April 29, 2014 would remain in effect except as modified. This Court modified the April 29, 2014 order by setting Father's earning capacity to $91,000.00 and determining that Father's support obligation, effective to March 28, 2014, would be $2,645.00 per month plus $45.00 arrears per month, for a total monthly support obligation of $2,690.00 per month.

On July 25, 2014, Father timely filed his Notice of Appeal of this Court's June 25, 2014 Order of Court. By Order of Court dated July 25, 2014, this Court ordered Father to file of record and serve on the undersigned a concise statement of matters

complained of on appeal. On August 14, 2014, Father timely filed his Concise Statement of Errors Complained of Pursuant to Rule of Appellate Procedure 1925(b).

Trial Court Opinion, 8/26/2014, at 1-6.

The two issues raised in this appeal, as framed by Father, are as follows:

> The trial court abused its discretion and/or erred as a matter of law in assigning an earning capacity of $91,000.00 to Father as this is both punitive and unrealistic in light of current economic conditions and, therefore, the parties' respective child support obligations must be recalculated using Father's actual income, which is a realistic earning capacity particularly in light of the fact that Father's reduction in income was involuntary and out of Father's control[.]

> The trial court abused its discretion and/or erred as a matter of law in failing to assign an earning capacity to Mother to calculate the parties' respective child support obligations, particularly in light of the fact that all three children are in school full-time and there is no physical impediment as to why Mother cannot engage in meaningful employment[.]

Father's Brief, at 7.

The standard of review of a trial court's decision in a support case is well settled:

> When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is

absolute, and the purpose of child support is to promote the child's best interests.

*Kimock v. Jones*, 47 A.3d 850, 853–854 (Pa. Super. 2012) (citations omitted).

Additionally,

[a]n award of support, once in effect, may be modified via petition at any time, provided that the petitioning party demonstrates a material and substantial change in their circumstances warranting a modification. *See* 23 Pa.C.S. § 4352(a); *see also* Pa.R.C.P. 1910.19. The burden of demonstrating a "material and substantial change" rests with the moving party, and the determination of whether such change has occurred in the circumstances of the moving party rests within the trial court's discretion.

*Summers v. Summers*, 35 A.3d 786, 789 (Pa. Super. 2012) (citations omitted). A change in circumstance is considered substantial so as to warrant a modification when the change is "either irreversible or indefinite." *R.C. v. J.S.*, 957 A.2d 759, 763 (Pa. Super. 2008).

First, Father challenges the court's decision to assign him an earning capacity of $91,000.00, which is a reduction from his prior earnings of $115,000.00, but approximately $24,000.00 higher than his projected income for 2014. Father asserts his contract with L3 Communications came to an end just as the war in Afghanistan and Iraq ended, and such wartime contracts are no longer available. Father explains he needed to obtain employment and obtained his current position with the Federal Bureau of Prisons at an annual salary of $58,841.38 and a recruitment allowance of $81,000.00. Father argues "the jobs for which Father is qualified as a result

of his experience and training have dwindled since the war [in] Afghanistan and Iraq came to an end. Thus, it is time to lower Father's earning capacity for support purposes and base his child and spousal support obligation upon his actual earnings." Father's Brief at 15.

Pennsylvania Rule of Civil Procedure 1910.16-2 provides, in part:

**(d) Reduced or Fluctuating Income.**

(1) *Voluntary Reduction of Income*. When either party voluntarily assumes a lower paying job, quits a job, leaves employment, changes occupations or changes employment status to pursue an education, or is fired for cause, there generally will be no effect on the support obligation.

(2) *Involuntary Reduction of, and Fluctuations in, Income.* No adjustments in support payments will be made for normal fluctuations in earnings. However, appropriate adjustments will be made for substantial continuing involuntary decreases in income, including but not limited to the result of illness, lay-off, termination, job elimination or some other employment situation over which the party has no control unless the trier of fact finds that such a reduction in income was willfully undertaken in an attempt to avoid or reduce the support obligation.

…

(4) *Earning Capacity*. Ordinarily, either party to a support action who willfully fails to obtain appropriate employment will be considered to have an income equal to the party's earning capacity. Age, education, training, health, work experience, earnings history and child care responsibilities are factors which shall be considered in determining earning capacity.

Pa.R.C.P. 1910.16-2(d)(1), (2), (4).

Here, in determining Father's support obligation, the trial court considered the Rule 1910.16-2(d)(4) earning capacity factors. The trial court determined that Father is 47, has not reported any health issues, has a degree in criminology, and has been employed in a career in the intelligence field, working for government contractors in both domestic and overseas operations in support of the war efforts. Prior to Father's present employment, working for the Federal Bureau of Prisons, Father worked for L3 Communications, a government contractor. The court noted Father's prior support order was based on Father's gross income set at $115,000.00 per year, but Father had indicated he earned upwards of $173,000.00 per year with L3 Communications, which decreased over time to $108,000.00 prior to the expiration of his contract. The court also noted Mother's statement that Father had not made less than $100,000.00 in the past 15 years. The court found Father left his job with L3 Communications prior to the expiration of his contract in order to have continued employment. Finally, the trial court found Father had no child care responsibilities for the majority of the time, due to Father's residing in California. *See* Trial Court Opinion, 8/26/2014, at 10–11. The court opined:

> After reviewing the earning capacity factors, it is clear to this Court that Father has an earning capacity that is greater than his current salary. Although Father voluntarily left his employment with L3 Communications prior to the expiration of his employment contract, Father did so in order to have continued employment and this Court does not consider Father's change in employment to be a voluntary reduction in income. However, Father must be held to the appropriate earning capacity, and

Father's earning capacity is higher than his current $58,541 per year salary and higher than $66,900.00 per year including the recruitment bonus.

Trial Court Opinion, 8/26/2014, at 11. The trial court explained:

Father has not made less than $100,000 per year in the past fifteen years, until he began working at his current position. This Court understands that Father benefited from the war effort and some of the lucrative careers available for those willing to work overseas in hostile war zones. This Court also understands that some of the positions that Father may have been eligible for have dried up as the war effort has been reduced. Nevertheless, it is Father's salary history which this Court sees as the primary factor in holding Father to an earning capacity of $91,000.00. Notably this Court did not hold Father to an earning capacity of $100,000 or greater despite Father's salary history indicating that Father has had the capability to earn at least such a salary for the majority of his adult life. Rather, this Court determined that $91,000.00 per year is an appropriate earning capacity for Father, taking into consideration the fewer job opportunities open to Father than before, but also Father's education, training, and work experience in the field of intelligence, the children's special needs, and Father's limited responsibility for child care duties.

This Court's determination that Father's earning capacity is $91,000.00 was not made arbitrarily and was made in consideration of all relevant factors, which includes a discount to Father's prior earnings of greater than $100,000.00 per year due to the changing circumstances regarding the sources for such employment. Additionally, Father's statements on the record that his current position is the "worst case scenario," the fact that Father took his current much lower-paying position in order to not have any gaps in employment due to his prior employment contract ending, and the fact that Father has continued his search with recruiters and on the internet for higher paying employment, all show Father's determination to stay gainfully employed and to find employment that reflects his actual earning capacity. This Court did not commit an error of law or an abuse of discretion in determining Father's earning capacity.

*Id.* at 11–12.

- 9 -

While Father challenges the trial court's ruling based upon this Court's decisions in **Novinger v. Smith**, 880 A.2d 1255 (Pa. Super. 2005), **Grigoruk v. Grigoruk**, 912 A.2d 311 (Pa. Super. 2006), and **Dennis v. Whitney**, 844 A.2d 1267 (Pa. Super. 2004), we find these cases present no basis upon which to disturb the decision of the trial court.

In **Novinger**, this Court held that the trial court abused its discretion in holding the father to an earning capacity of $40,000 based on a welder's job that the father held for one year, more than four years prior, for which he was unqualified and had no formal training. The father, after being fired from his welding job, searched for additional, commensurate welding jobs. When his job search proved unsuccessful, he returned to his prior, lifelong work as a carpenter/roofer. After four years of earning $25,000 per year, the father filed a petition for modification. This Court instructed: "Even if a person loses a job through his or her own fault, after several years it is necessary to reevaluate the situation by considering his or her earning capacity relative to the employment market at the later time." **Id**., 880 A.2d at 1256 (footnote omitted). Here, however, in contrast to **Novinger**, Father had consistent employment at a high-paying rate in his field until recently before the *de novo* hearing.[2]

_____

[2] We note that Father's present income was effective "as of January of 2014," and the *de novo* hearing in this case was held on June 25, 2014. N.T., 6/25/2014, at 6.

In *Grigoruk*, this Court stated that a trial court can reduce the support obligation of a parent fired for cause where the parent makes an effort to mitigate the lost income. The mother in *Grigoruk* had a background as an administrator/executive, primarily in the education field. After she was discharged from the Girl Scouts for willful misconduct, she conducted a six-month job search. Eventually took the only job she was offered, as a reading specialist, resulting in a reduction in salary. Here, while Father accepted his present job prior to the expiration of his contract with L3 Communications to avoid a gap in employment, Father's current position with the Federal Prison Bureau is outside his career field of intelligence.

In *Dennis*, this Court held that where a parent had not voluntarily reduced income to avoid more lucrative career opportunities, but had consistently performed a lower paying job from before the birth of a child, the trial court did not abuse its discretion in calculating earning capacity based upon the lower paying job. In *Dennis*, although the mother sought to have the father held to a higher earning capacity because he had a Bachelor of Arts degree in Agricultural Engineering, the father had never worked as an agricultural engineer. Here, unlike *Dennis*, Father's current, lower paying position is a recent one.

We commend Father's decision to accept a job at a lower wage in order to avoid a period of unemployment. However, based on our review, we find no abuse of discretion on the part of the trial judge in assessing

Father's support obligation based on an earning capacity of $91,000.00. **See Baehr v. Baehr**, 889 A.2d 1240, 1245 (Pa. Super. 2005) ("The trial court, as the finder of fact, heard the witnesses, and is entitled to weigh the evidence and assess its credibility.").

We recognize that Father's assigned earning capacity of $91,000.00 is $24,000.00 greater than his present income, and will be even greater than Father's 2015 income, which will be reduced by the $8,100.00 "one time"[3] recruitment bonus. However, there is no evidence on the record as to whether Father is required to remain in his current position for a certain length of time based upon receiving the recruitment bonus. We also note there was less than six months' time between when Father's new income became effective, January, 2014, and the date of the *de novo* hearing, June 25, 2014, and Father did not show that he cannot sustain the earning capacity attributed to him by the trial court.[4] Accordingly, Father's first argument warrants no relief. Nonetheless, we add that if Father is ultimately unable to replace his present salary with one consistent with his

_____

[3] N.T., 6/25/2014, at 10.

[4] There was limited evidence regarding the extent of Father's job search. Father explained: "The jobs that I have [had] since 2008 that are in support of the war effort [in Afghanistan and Iraq], they really aren't there." N.T., 6/25/2014, at 14. He further testified: I took – the job I had absolutely went away, and I was hitting every recruiter as well as every – just, you know, websites[.]" **Id.**

assigned earning capacity, he would be able to request modification of the present support order.

Father next contends that the trial court erred in failing to assign an earning capacity to Mother to calculate the parties' respective child support obligations. In this regard, Father argues that all three children are in school fulltime and there is no physical impediment as to why Mother cannot engage in meaningful employment. Father's Brief at 26.

"It is proper for a court to refuse to assign an earning capacity to a parent who chooses to stay at home with a minor child. Moreover, the trial court, as the finder of fact, is entitled to weigh the evidence and assess the credibility of witnesses." *Krankowski v. O'Neil*, 928 A.2d 284, 287 (Pa. Super. 2007) (citations omitted).

Here, the trial court reasoned:

Rule 1910.16-2(d)(4) requires the trial court to look at several factors in determining earning capacity, and this Court's analysis of these factors as pertaining to Mother and this Court's determination that Mother has zero earning capacity are as follows:

Age: Mother is forty-three years of age. Age is not a factor that would prevent Mother from working, or, alternatively, providing caregiving duties to the parties' children.

Education, Training, Work Experience: Mother has not worked since prior to 2001, the year of birth of the oldest child.

Health: There is nothing in the record in this case that indicates that Mother has any health issues that would prevent her from working, or, alternatively, providing primary caregiving duties to the parties' children.

Earnings History: Mother has not had any earnings since prior to 2001, the year of birth of the oldest child.

Child Care Responsibilities: Pursuant to the October 15, 2013 Order of Court in the custody case, Adams County docket # 2011-SU-527, Father was provided with partial physical custody of the parties' three children for the Christmas 2013 and New Year's Eve 2013 holidays. The October 15, 2013 Order of Court indicated that subsequent to January 1, 2014, Father's physical custody would be based upon the mutual agreement of the parties or further order of court. No further order has been entered providing Father with additional physical custody time, and it is unknown whether the parties have agreed to any additional physical custody time for Father. Past orders of court have also provided Father with similar limited periods of partial physical custody. Mother otherwise has primary physical custody of the parties' three children.

Mother has been a stay-at-home mom, caring for the children since the oldest child's birth in 2001. With the exception of some limited physical custody time with Father, Mother has been the sole caregiver and caretaker for the children, two of whom have varying levels of special needs and a third who has related behavioral and relational issues. Caring for the children and their needs has been a full-time job for Mother. During the current summer season, Mother has had to provide full time daily care in support of the parties' middle child and his special needs. For reasons unknown to this Court, this child was not enrolled in a special summer program for children on the autism spectrum and other disabilities, "the Amazing Kids Club," a program which would have helped relieve Mother from some of the daytime caretaking responsibilities.

While this Court understands and has contemplated Father's position regarding Mother's work status, Father underestimates Mother's duties in caring for the parties' children and their special and related needs. Mother's duties are constant. Mother is currently providing fulltime care for the middle child. After the commencement of the school year, it may seem to Father that Mother will receive a reprieve for a few hours per day while the children are at school, but this time off from what is essentially an otherwise twenty-four hour per day position provides Mother with time to accomplish associated tasks and to manage her household. Mother must certainly also

be on duty during this time for inquiries from the school, staying home with or picking up sick children from school, and taking the children to their scheduled medical and other appointments. Father has none of these responsibilities.

This Court finds the earning capacity factor regarding child care responsibilities to be the primary and most relevant factor in its decision regarding Mother's earning capacity. Mother's child care responsibilities take up the majority of her time, and compete completely with her available time to be employed outside of these responsibilities. Mother's lack of work and earnings history for the past fourteen years would also be problematic for Mother trying to reenter the work force at this time, but would not alone prevent Mother from acquiring meaningful employment. This Court properly held Mother to a zero earning capacity, based on its review of the facts and circumstances of the instant case, and in consideration of the earning capacity factors ….

Trial Court Opinion, 8/26/2014, at 14–16. We discern no abuse of discretion. The trial court considered the Rule 1910.16-2(d)(4) factors and fully explained its rationale for assigning Mother a zero earning capacity, which is supported by the record. Therefore, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/21/2015

- 15 -