J. S57003/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DEBORAH A. KUTSCH, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | No. 252 WDA 2016 |
| | : | |
| RAYMOND D. ANTHONY | : | |

Appeal from the Order Entered January 19, 2016,
in the Court of Common Pleas of Armstrong County
Civil Division at Nos. Docket Number 990342,
PACSES Case Number 571101351

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN AND STRASSBURGER,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED AUGUST 15, 2016**

Deborah A. Kutsch ("Mother") appeals from the order entered in the Court of Common Pleas of Armstrong County on January 19, 2016 sustaining, in part, and overruling, in part, her exceptions to the findings and recommendations of the hearing officer and increasing the child support obligation of Raymond D. Anthony ("Father") to $572 per month, retroactive to June 8, 2015, and deferring collection of Father's arrearages until his support obligation ends.  We affirm.

The trial court set forth the following factual and procedural history:

> [Mother] initiated this case by filing a complaint for child and spousal support on August 9, 1999.  The complaint regarded, in part, the parties' minor child, [] [born] December [], 1997 (the "Child").  On September 15, 1999, the Court entered an interim support order with a monthly support

_____

* Retired Senior Judge assigned to the Superior Court.

obligation of $838.00, which included a basic obligation of $788.00 together with $50.00 per month in arrearages. [Mother's] net monthly income at that time was calculated to be $1,731.01 per month, which included a substantial amount from "USWA LOCAL 196." [Father] was at that time working full time for Allegheny Ludlum Corporation, now Allegheny Technologies, Inc. ("ATI"). His support payments were made via wage attachment. On December 7, 1999, the Court further ordered [Father] to pay $200.00 per month toward childcare expenses based on the parties' agreement to that effect. Other than several routine orders for the attachment of [Father's] unemployment benefits, no substantive activity occurred in the case for several years. A divorce decree from Allegheny County was cross-filed with this Court on December 27, 2004, along with an accompanying agreement that, among other things, terminated [Father's] spousal support obligation.

On January 25, 2005, [Father] filed a petition to modify his support obligation. In his petition, [Father] stated that [Mother] was terminated from her employment on January 10, 2005, and therefore his payment of childcare expenses was no longer necessary. He also sought reimbursement for certain overpayments of spousal support. An initial conference was scheduled, but [Mother] failed to appear. The Court accordingly terminated the existing support order on February 17, 2005. [Mother] requested a hearing *de novo*, at which the parties appeared and "offered various stipulations of fact and an agreed upon Order of Support."

In the stipulations, the parties agreed, in part, that 1) there had been no need for childcare expenses since January 3, 2005; 2) [Father's] monthly net income was $3,100.00; 3) [Mother's] *imputed* monthly net income was $2,400.00; and 4) [Father's] monthly child support obligation would be $572.00, with no arrearages due. The accompanying interim support order, dated March 21, 2005 and entered March 23, 2005,

includes these stipulations and also provides for the allocation of unreimbursed medical expenses (57% to [Father] and 43% to [Mother]) after the annual payment of the first $250.00 of such expenses by [Mother]. The agreed-upon support arrangement remained in effect for the next several years, during which [Father's] payment obligation remained at either $572.00 or $622.00 monthly.[Footnote 1]

> [Footnote 1] The record does not indicate why, at times, $50.00 in arrearages were added onto [Father's] basic monthly support obligation of $572.00. In the agreed-upon interim order [dated] March 21, 2005, arrearages were set at $0.00. In any event, [Father's] basic support obligation remained at $572.00.

[Father] retired from ATI in 2008, after which the necessary Qualified Domestic Relations Orders ("QDROs") were entered by the Court to ensure that [Father's] monthly support obligation would be paid from his ATI pension. The QDROs were entered on December 4, 2008 and February 2, 2009. [Father's] basic monthly support obligation did not change. [Mother] filed a petition to modify the support obligation on February 4, 2010. In her petition, [Mother] states that the case had not been reviewed in more than three years and that she was then homeschooling the Child, who had been diagnosed with Tourette Syndrome. After an initial conference was held, the Court dismissed [Mother's] petition, finding that "there were no substantial changes in circumstances to warrant a modification of current support." Neither party requested a hearing ***de novo***, and the case again [lay] dormant for approximately the next five years.

[Father] filed the instant petition to modify on June 9, 2015, in which he alleges that [Mother] did not comply with the terms of the March 21, 2005 support order in that she 1) did not pay the first $250.00 of annual unreimbursed medical expenses,

and 2) did not pay 43 percent of the actual expenses incurred for the Child's orthodontic care. [Father] paid 100 percent of these expenses and sought reimbursement. After an initial support conference, the Court determined that [Mother's] imputed net monthly income remained $2,400.00, and calculated [Mother's] actual net monthly income to be $2,526.04. The monthly support obligation thus was reduced to $495.00, which included $45.00 per month in arrearages. The interim order is effective as of the date the domestic relations section received [Mother's] petition, or June 8, 2015. [Mother] requested a hearing **de novo**, which was conducted by the Hearing Officer on August 31, 2015. Both parties appeared at the hearing **pro se**.

In his findings, the Hearing Officer imputed to [Mother] a net monthly income of $2,484.42 based on her prior employment with the local union. The Hearing Officer declined to reduce [Mother's] imputed income because he concluded that her embezzlement activity, which resulted in criminal charges and her employment termination, was voluntary. The Hearing Officer calculated [Father's] net monthly income based on his monthly pension benefit from ATI. The Hearing Officer declined to consider certain household expenses submitted by [Mother], concluding that the monthly obligation generated by the support guidelines automatically would include ordinary daily living expenses and that none of the expenses submitted by [Mother] were extraordinary. Finally, although the parties appeared to agree that [Father] had not seen the Child in a period of several years, the Hearing Officer did not recommend a deviation from the guideline support amount because he concluded that none of the deviation factors set forth at Pa.R.Civ.P. 1910.16-5 were applicable. The Hearing Officer ultimately recommended a monthly support obligation of $495.00, including $45.00 toward arrearages. An interim order of court reflecting this amount was entered on September 21, 2015.[Footnote 2]

- 4 -

[Footnote 2] At the *de novo* hearing, [Father] stated that the issue giving rise to his modification petition, namely, the reimbursement of certain medical expenses, had been resolved by agreement of the parties prior to the hearing.

[Mother] filed timely exceptions on October 7, 2015, wherein she raised 31 issues regarding the Hearing Officer's alleged bias against her, the calculation of her earning capacity, the calculation of [Father's] net monthly income, the Hearing Officer's credibility determinations, the Hearing Officer's failure to deviate from the guideline support amount, and certain of the Hearing Officer's evidentiary rulings. At argument, [Mother], who was then represented by counsel, agreed that her exceptions reduced essentially to the following: 1) the imputation to her of a $35,000.00 annual salary, 2) the failure of the Hearing Officer to make an upward deviation in the support obligation based on the lack of time [Father] has spent with the Child, and 3) the Hearing Officer's refusal to attribute additional income to [Father].

The Court overruled in part, and sustained in part, [Mother's] exceptions. The Court found no error or abuse of discretion by the Hearing Officer in his calculations of the parties' imputed and actual net monthly incomes. The Court did, however, conclude that an upward deviation in the support obligation was warranted due to [Father's] having spent no time with the Child for several years. The Court therefore ordered that the support obligation be increased back to its former amount of $572.00 per month, retroactive to June 8, 2015. The Court also made any arrearages payable after the basic support obligation ends.[Footnote 3] This appeal followed.

[Footnote 3] The Child reached 18 years of age on December 1, 2015. He will graduate from high school in or about

June 2016. The support obligation presumably will terminate at that time.

Trial court opinion, 3/17/16 at 1-7 (citations to record omitted; emphasis in original).

Mother raises the following issues for our review:

I. Whether the Court committed an error of law and/or abused its discretion in failing to use its authority to remand this case for a full evidentiary hearing into [Father's] finances for the past fifteen years and to order support be recalculated retroactively based on those findings?

II. Whether the Court committed an error of law and/or abused its discretion in basing [Father's] support obligation on his post retirement income rather than on the income he was earning prior to his early, voluntary retirement?

III. Whether the Court committed an error of law and/or abused its discretion in assigning [Mother] a $35,000.00 earning capacity without taking all factors into consideration?

IV. Whether the Court committed an error of law and/or abused its discretion by failing to consider Rule 1910.16-6 in regard to the child's extracurricular expenses and in failing to order [Father] to reimburse [Mother] for his proportionate share of those expenses?

V. Whether the Court committed an error of law and/or abused its discretion by failing to consider and give proper weight to all things that affect the best interest of the child in this case?

Mother's brief at 4.

When reviewing a child support order, we employ the following standard of review:

> [T]his Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused.

*W.A.M. v. S.P.C.*, 95 A.3d 349, 352 (Pa.Super. 2014) (citations omitted). A finding of an abuse of discretion must rest upon a showing by clear and convincing evidence, and the trial court will be upheld on any valid ground. *Baehr v. Baehr*, 889 A.2d 1240, 1243 (Pa.Super. 2005). Additionally, the fact-finder, having heard the witnesses, is entitled to weigh the evidence and assess its credibility. *Id.* at 1245.

Mother first complains that the trial court abused its discretion in failing to remand the case back to the hearing officer for "a full evidentiary hearing into [Father's] finances for the past [15] years and to order support be recalculated retroactively based on those findings." (Mother's brief at 18.) Mother's argument on this issue sets forth nothing more than her displeasure with the January 19, 2016 support order that is the subject of this appeal and her desire for a "do-over." She complains that "[t]hroughout the *de novo* hearing, [Father's] testimony continued to be inconsistent[,

but] [e]ven so, the lower court has continued to give him credibility." (Mother's brief at 25.) She then rehashes Father's testimony and claims an abuse of discretion because the fact-finder did not weigh the evidence as she wished and made credibility determinations that she disliked. Our role as an appellate court is not to reweigh the evidence and/or reassess credibility determinations. **See id.** We, therefore, decline Mother's invitation to do so.

Mother next complains that the trial court abused its discretion when it based Father's support obligation on his post-retirement income rather than on the income that he earned prior to his retirement, which, Mother contends, was voluntary. To support her contention, Mother cites **Smedley v. Lowman**, 2 A.3d 1226 (Pa.Super. 2010), for the blanket proposition that when a parent has a support obligation and takes an early retirement, that parent voluntarily reduces his or her income, and therefore, the support obligation cannot be decreased. (**See** Mother's brief at 27-28.)

The facts of **Smedley**, however, differ from the facts of this case. In **Smedley**, the father voluntarily retired at age 52, despite being in good health and being capable of continued employment. **Smedley**, 2 A.3d at 1227-1229. Here, the record reflects that Father was employed as a truck driver and retired when he was approximately 55 years old.[1] (Notes of testimony, 8/31/15 at 6.) Father testified that he retired because he needed

---

[1] The record reflects that Father was born on December 26, 1953, and retired in 2008.

hip replacements and could no longer perform his job duties. (***Id.***) Therefore, unlike ***Smedley***, Father's testimony, found credible by the fact-finder, established that Father was not in good health and not capable of continued employment when he retired. Consequently, Mother's reliance on ***Smedley*** for the blanket proposition that an early retirement equates to a voluntary retirement is misguided.

We also note that Father's current support obligation of $572 per month was set in 2005 and was based on Father's pre-retirement income. (Interim order of court, filed 3/23/05.) Therefore, Mother has no grounds to complain about the basis for the support obligation. Consequently, this claim lacks merit.

Mother next complains that the trial court abused its discretion when it assigned her an earning capacity of $35,000 "without taking all factors into consideration." (Mother's brief at 30.) The record reflects that Mother was terminated from her job as a secretary at a local union in January 2005 because she was charged with and convicted of embezzlement. Following her termination from employment, Father filed a modification petition. Thereafter, the parties stipulated to an imputed income for Mother of $2,400 per month. (Hearing officer's findings and recommendations, filed 3/23/05; ***see also*** interim order of court, filed 3/23/05.) The record further reflects that although Mother filed a petition for modification on February 1, 2010, the trial court found no substantial changes to warrant a modification, and

Mother did not seek a **de novo** hearing.  (Order denying petition to modify, 2/26/10; notice of right to request a hearing, 2/26/10.)

Mother now complains that she should not be assigned an annual earning capacity of $35,000.  In support, she cites **Novinger v. Smith**, 880 A.2d 1255 (Pa.Super. 2005), for the proposition that when a parent loses employment due to an "infraction," that parent should not have to pay forever for losing that employment.  (Mother's brief at 31.)  Although Mother correctly sets forth that part of the **Novinger** opinion, Mother ignores the part that distinguishes losing a job due to an "infraction" such as tardiness from losing a job due to criminal behavior such as her own felonious embezzlement activities.

Our courts have held that those seeking reductions in support obligations due to criminal behavior that results in incarceration will not be rewarded for that behavior, and upon release, must start paying their arrears.  **See Novinger**, 880 A.2d at 1257; **see also Yerkes v. Yerkes**, 824 A.2d 1169 (Pa. 2003) (finding that incarceration is not a change in circumstances that can be used to modify a support order).  The policy behind this rule is that imprisonment and its resulting reduction in income are foreseeable consequences of criminal activity akin to voluntary unemployment.  **Yerkes**, 824 at 306.  Taking this to its logical extension as it applies here, it was foreseeable to Mother that her embezzlement could lead to job loss and a criminal conviction that could severely impede her

ability to secure future employment. As such, Mother's reduction in income was in her control and she cannot now be rewarded for her criminal activity by using it as a change in circumstances to reduce her imputed earning capacity. Therefore, this claim lacks merit.

Mother next complains that the trial court abused its discretion when it failed to consider Pa.R.Civ.P. 1910.16-6 in denying her request for an upward deviation in Father's support obligation because of the Child's extracurricular expenses. Pennsylvania Rules of Civil Procedure 1910.1 through 1910.50 govern support actions. In deciding whether to deviate from the amount of support determined by the guidelines, the trier-of-fact must consider, among other things, the Child's unusual needs and unusual fixed obligations. Pa.R.Civ.P. 1910.16-5. Here, Mother concedes that Rule 1910.16-5 "may not apply." (Mother's brief at 34.) Consequently, Mother concedes that the expenses that she set forth are not "unusual needs" and/or "unusual fixed obligations."

Instead, Mother argues that Rule 1910.16-6 applies. Under that rule, childcare expenses, health insurance premiums, unreimbursed medical expenses, private school tuition, and mortgage payments may warrant an adjustment to the basic support obligation. The expenses that Mother sets

forth,[2] however, bear no relationship to the enumerated expenses set forth in Rule 1910.16-6. Therefore, Mother's claim that the trial court abused its discretion for failing to consider an inapplicable rule to determine that an upward adjustment was not warranted cannot, and does not, constitute an abuse of discretion. Consequently, this claim lacks merit.

Mother finally complains that the trial court abused its discretion by failing to consider the best interests of the Child. Mother argues: "By reviewing the case history and questioning [Father] during the *de novo* hearing and argument, [Mother] has clearly and convincingly shown the inconsistencies in [Father's] testimony, yet the lower court has chosen to ignore them. [Mother] beseeches that this Honorable Court not do the same." (Mother's brief at 36.) Once again, Mother invites us to reweigh the evidence and reassess the fact-finder's credibility determinations. Once again, we decline her invitation to do so because that is not our role as an appellate court. *See Baehr*, 889 A.2d at 1243.

Order affirmed.

---

[2] In addition to household expenses, Mother sets forth certain of the Child's expenses for the "previous 12 months," including test fees, purchase of a vehicle, traveling expenses related to the Child's participation in Boy Scouts, lacrosse expenses, cell phone, car insurance, vet bills for the Child's dog, and school lunches. (Notes of testimony, 8/31/15 at Exhibits 2 and 3.)

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  8/15/2016