J-S63014-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| HEATHER M. MILLER | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | | |
| CHRISTOPHER M. MILLER | | |
| Appellant | | No. 305 WDA 2017 |

Appeal from the Order Entered January 18, 2017
In the Court of Common Pleas of Erie County
Domestic Relations at No(s): NS 201500162

BEFORE:  BOWES, J., SOLANO, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.:                  FILED DECEMBER 29, 2017

Christopher M. Miller ("Father") appeals from the January 18, 2017 order denying his motion to modify the allocated child and spousal support obligations in favor of his wife, Heather M. Miller ("Mother"), and three children.[1]  We reverse the portion of the order relating the calculation of Father's child support obligation and remand for further proceedings.

_____

[1] Mother filed for divorce during 2015 and, as of the date of the January 18, 2017 support hearing, no divorce decree had been entered.  While we have jurisdiction to consider claims related to child support, we cannot address issues related to spousal support or alimony pendent lite until a divorce decree has been entered and the certified record shows that no economic claims remain to be decided.  Hrinkevich v. Hrinkevich, 676 A.2d 237, 239 (Pa.Super. 1996) ("the portion of a trial court order attributable to child support is final and immediately appealable; however, the portion of an order

On April 22, 2015, Mother instituted this action for support for herself and the parties' four minor children, the oldest of whom subsequently reached the age of emancipation and is no longer involved in these proceedings. Mother and Father share equal physical custody of the children. During the conference phase of the support proceedings, the parties consented to a June 16, 2015 support order that obligated Father to pay Mother $2,840 per month. The order allocated $1,609.54 of the amount toward child support, $907.13 in spousal support designated as alimony pendent lite ("APL"), and a $323.30 contribution toward the mortgage on the marital home where Mother and the children lived. The monthly obligation was based upon Father's stipulation to a monthly net income of $7,359.40 from a masonry business that he operated.

Approximately three months after the support order was entered, Father filed a petition to modify the order so that it conformed to a consent order entered in the parallel divorce proceeding. That order provided Father credit for paying the mortgage directly to the bank. During the ensuing support conference, Father also requested a downward modification of his support payment because he was forced to close his masonry enterprise. He explained that he had to shutter his business due to his inability to pay vendors, satisfy mounting operating costs, and pay overdue taxes and unemployment

_____

allocated to spousal support is interlocutory."). Hence, we address Father's arguments only as they relate to his child support obligation.

- 2 -

compensation insurance. He obtained employment with a competitor earning $25.00 per hour. The conference officer discredited Father's assertions, concluded that he voluntarily abandoned his masonry company to reduce his support obligations, and assigned Father an earning capacity that was identical to the income that he earned from his business. Accordingly, the conference officer issued an interim order that credited Father's past mortgage payments against his support arrears, but did not alter the monthly support obligation.

Father filed a de novo appeal from the conference officer's interim order, and following an evidentiary hearing, the trial court ruled that the interim order was "appropriate" and entered it as final order. The court neglected to issue any independent finding of facts to support its decision. Father did not appeal.

On February 4, 2016, Father filed another petition for a downward modification of his support obligation. He stated that he had been laid off from his initial employer during December 2015, but was hired at the same rate by a different competitor three months later. In addition, Father claimed that he was being sued by his former suppliers. He asked that his income for support purposes be calculated at the amount of his actual earnings of $25.00 per hour. The conference officer denied that petition, and following an evidentiary hearing, the trial court continued to assign Father an earning

capacity commensurate with what it had been when he operated his masonry venture. Again, the court declined to proffer an independent finding of facts.

On October 24, 2016, Father filed a third petition to reduce his support obligations. He leveled several grounds for the downward modification. First, he argued that his former earning capacity had been greatly reduced and that the imputed amount was impossible to achieve. In addition to that complaint, he (1) contended that Mother's earning capacity should reflect her ability to earn a $50,000 annual salary as an elementary school teacher; (2) argued that APL was inappropriate because Mother was delaying the divorce proceedings; and (3) reasserted his initial complaint that the redundant mortgage contribution should be removed from the calculation of the support order. See Conference Officer's Summary, 10/17/16, at 2. The conference officer issued an interim order that reduced the total support obligation from $2,840 to $2,548.90 to reflect the emancipation of the oldest child and the overdue removal of the duplicate $323 mortgage contribution requirement that had persisted since the initial support order entered during 2015. Nevertheless, the interim order increased the amount that Father paid to each of the three remaining children by $29.40 per child, and without explanation, it increased Mother's monthly APL from $907.13 to $1011.03. During the ensuing de novo appeal, Father presented evidence of his prolonged economic

struggle,[2] including the fact that he frequently works up to sixty hours per week and solicits side jobs simply to earn enough money to comply with the court-ordered support obligations that now exceed seventy percent of his net monthly income. N.T., 1/18/17, at 16-17, 19, 20-21, 27.

Once more, the trial court found the conference officer's interim order appropriate and extended it as a final support order. Although the court initially continued its refusal to express any independent findings of fact, following Father's timely appeal from the January 18, 2017 order, the trial court finally provided its stand-alone rationale. Essentially, the court determined, "Father simply has not demonstrated a change of circumstances[,]" that warranted modification. Trial Court Opinion, 4/11/17, at 6. The court continued, if Father objected to the assessment of his earning capacity, he should have appealed that order at the outset. It reasoned, "[A] modification petition is not a substitute for an appeal." Id. at 8. For the

_____

[2] Father testified that he filed a petition for bankruptcy during December 2016. That petition does not affect our decision herein insofar as Father's domestic support obligations are not subject to discharge. See 11 U.S.C.A. § 523(a)(5) and (15). It is unclear, however, whether the trial court's post-petition determination of Father's support obligations violated the Bankruptcy Code's automatic stay of state court proceedings. We need not address that question, nor the related issue regarding the effect of the stay on the instant appeal, because Father's bankruptcy case was closed on September 26, 2017. See U.S. Bankruptcy Court, Western District of Pennsylvania, case number 16-11178-TPA.

following reasons, we disagree with the court's perspective that Father is eternally bound by the court's prior assessment of an earning capacity.

Father presents two issues for our review:

[1.] Whether the trial court committed an error of law and/or an abuse of discretion when it failed to consider the combination of several important factors pertaining to Appellant's actual income for purposes of guideline calculation, to-wit: Appellant's actual income; the passage of time over a prolonged period to reevaluate earning capacity; and Appellant's realistic earnings versus theoretical earning capacity.

[2.] Whether the trial court committed an error of law and/or an abuse of discretion when it failed to, in lieu of utilizing guidelines as to non-existent prior income, apply a deviation from the same due to actual income.

Father's brief at 4.

Initially, we delineate our standard or review of a support order.

When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of that discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

Arbet v. Arbet, 863 A.2d 34, 39 (Pa.Super. 2004) (citation omitted).

We conclude that the trial court erred in its persistent utilization of Father's prior, exorbitant earning capacity instead of his modest actual earnings to calculate his income for support purposes. Father's first complaint

is that his non-existent prior income from his defunct business should no longer be used to calculate his income. In rejecting Father's claim, the trial court determined that there has not been a change of circumstances between these support modification proceedings and the prior ones to warrant modification. However, this rationale misses the mark. Father's position is largely premised upon the passage of time since his business closed, and he relies upon that time lapse as the premise for his position that his actual earnings, as opposed to the income he earned from his business, should be used for support purposes. Hence, the change in circumstances at issue herein is the period of time that his business has been closed.

The law is clear that support obligations are determined by actual income and financial resources rather than earning capacity. Pa.R.C.P. 1910.16-2. ("Generally, the amount of support to be awarded is based upon the parties monthly net income."). Indeed, earning capacity is reserved for instances where a party "willfully fails to obtain appropriate employment[.]" Smedley v. Lowman, 2 A.3d 1226, 1228–29 (Pa.Super. 2010). Pa.R.C.P. 1910.16–2(d)(4), states:

> (4) Earning Capacity. If the trier of fact determines that a party to a support action has willfully failed to obtain or maintain appropriate employment, the trier of fact may impute to that party an income equal to the party's earning capacity. Age, education, training, health, work experience, earnings history and child care responsibilities are factors which shall be considered in determining earning capacity. In order for an earning capacity to be assessed, the trier of fact must state the reasons for the assessment in writing or on the record. Generally, the trier of fact

should not impute an earning capacity that is greater than the amount the party would earn from one full-time position. Determination of what constitutes a reasonable work regimen depends upon all relevant circumstances including the choice of jobs available within a particular occupation, working hours, working conditions and whether a party has exerted substantial good faith efforts to find employment.

Pa.R.C.P. 1910.16–2(d)(4). Even when a court imputes an earning capacity, that fiction must be a reasonable reflection of reality. Indeed, "a support obligation is based upon the ability of a party to pay, and . . . the concept of an earning capacity is intended to reflect a realistic, rather than a theoretical, ability to pay support" Rule 1910.16-2 Explanatory Cmt—2010.

Father maintains that the protracted period of time that his business has been shut down should have been considered by the trial court before it rejected his request to modify the order using his actual earnings for support purposes. We agree. In Novinger v. Smith, 880 A.2d 1255, 1256 (Pa.Super. 2005), we addressed a similar issue and concluded, "Even if a person loses a job through his or her own fault, [eventually] it is necessary to reevaluate the situation by considering his or her earning capacity relative to the employment market at the later time." In that case, the father lost his position as a welder earning $40,000 per year and accepted a job as a general handyman. While his actual earnings were closer to $25,000, the trial court assigned the higher earning capacity for support purposes because his employer fired him for cause after he was late for work the day that he was discharged from a drug rehabilitation facility. In reversing the trial court's utilization of earning

capacity, we concluded that the father's actions failed to establish that he had deliberately tried to avoid his child support obligation and that he should be assigned an earning capacity equivalent to his actual earnings. Significantly, as it relates to the case at bar, we reasoned, "When a person quits a job or is fired for an infraction, . . . [t]he person should not have to pay forever for losing employment. At some point, the courts should take another look at his or her true earning capacity." Id. at 1257.

In the present case, Father had a successful masonry enterprise for fifteen years that he stipulated during the 2015 support conference afforded him net monthly income of $7,359.40. However, three months after entering that stipulation, Father was required to shutter his business and accept a position with a former competitor earning a small fraction of the stipulated amount. It is beyond argument that the trial court was permitted to discount Father's purported reason for closing his business and conclude instead that Father was merely trying to avoid his support obligations. However, it is equally undeniable that Father's economic struggles continued sixteen to eighteen months later and that he demonstrated a commitment to working sixty hours per week in order to comply with his support obligations. These later facts belie the trial court's tireless findings that Father is simply attempting to circumvent his financial obligations. In fact, it strains reason for the trial court to persist in the belief that Father would perform sixty hours of strenuous masonry labor per week for the benefit of a former competitor if,

as the trial court believes, he can revive his business at any time. See Trial Court Opinion, 4/11/17, at 2 n.2. ("Father did not, however, liquidate his business assets and, therefore maintained the ability to work on his own.").

While the facts of the two cases differ in that the trial court made an initial determination that Father was attempting to shirk is financial obligations to his wife and children, our holding in Novinger is informative. Prior to October 2015, Father operated an enterprise that appeared economically successful until he was forced to shutter it due to the cumulative economic circumstances of impending lawsuits by creditors and imminent penalties for multiple years of unpaid taxes. Since that date, he has worked for two former competitors earning $25 per hour and he attempted to mitigate the difference in income by working overtime when available and by soliciting side jobs from friends and family members. During the January 2017 hearing, Father presented evidence that the circumstances surrounding the failure of his masonry business continued to exist and that it would be impossible to miraculously re-invigorate the once successful enterprise.

We find that the trial court's refusal to recognize that the imputed obligation is outdated and contrary to reality, as shown by the certified record, is manifestly unreasonable. Particularly convincing is Father's principled attempt to mitigate the loss of his income and to continue to satisfy a support obligation that is approximately seventy percent of his monthly wages. Stated plainly, to the extent that Father could have earned $7,359.40 per month as

the owner of a masonry business, the certified record does not sustain the court's decision to continue to assess that earning capacity at this juncture. As we recognized in Novinger, supra, at 1257, "[a]t some point, the courts should [revisit the obligor's] true earning capacity." Since the grounds for the court's use of Father's earning capacity as the basis for determining his support obligation, i.e., the appearance of an attempt to shirk his financial responsibilities, have diminished since Father first stipulated to his net monthly income, we conclude that the court abused its discretion in denying Father's petition to modify his support obligation. Support should be calculated in light of Father's eighteen month earning history as an employee working forty to sixty hours per week rather than as the owner of a successful business. Thus, we remand the case with instructions for the trial court to fashion a guideline child support order utilizing Father's net monthly income pursuant to Pa.R.C.P. 1910.16-2 retroactive to October 24, 2016, the date that Father filed the underlying petition.[3]

_____

[3] As Father's appeal of the allocated order relating to APL is interlocutory, the calculation of that obligation is not affected by our decisions herein. Hrinkevich, supra. To the extent that Father's independent financial obligation to Mother continues after the entry of a final divorce decree, he can appeal the trial court's determination at the juncture. Thomas v. Thomas, 760 A.2d 397, 398 (Pa.Super.2000) ("[W]hen all economic matters involved in a divorce are resolved, any support order can be reviewed and corrected when the court finalizes the equitable division of the property.").

Order reversed.  Matter remanded for further proceedings.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  12/29/2017